<span style="font-variant:small-caps">Argued and Determined in the</span>

# SUPREME COURT

OF

<span style="font-variant:small-caps">North Carolina</span>

AT

<span style="font-variant:small-caps">Raleigh</span>

STATE OF NORTH CAROLINA v. SHERMAN ELWOOD SKIPPER

No. 122A92

(Filed 29 July 1994)

1. **Jury §§ 226, 227 (NCI4th)— capital case—death penalty views—equivocal answers—excusal for cause—rehabilitation not allowed**

While a juror's answers on voir dire in a capital case were not entirely unequivocal and her views on whether she could consider the death penalty as required by law were not unmistakably clear, the trial court did not err by excusing the juror for cause where her responses revealed that her thoughts and views on the death penalty would substantially impair her ability to follow the instructions of the court as they related to her duty as a juror. Furthermore, the trial court did not err by refusing to permit defendant to attempt to rehabilitate the juror where the prosecution explained in detail the procedure that must be followed in determining a sentence of death; after this explanation, the juror affirmatively responded three times that she would be substantially impaired in following the law because of her beliefs; and there was no indication that further questioning of the juror would have done anything but make the situation more confusing.

**Am Jur 2d, Jury §§ 289, 290.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

1

2. **Jury § 123 (NCI4th)— capital case—voir dire questions— consideration of age, mental impairment, etc.—attempt to stake out jurors**

The trial court did not err by refusing to permit defendant to ask prospective jurors in a capital case whether they could "consider" age, mental impairment or retardation, and other specific mitigating circumstances in reaching a decision, since the questions were an impermissible attempt to stake out the jurors. Defendant was given an adequate opportunity to discover any bias on the part of a juror where he was permitted to inquire generally into jurors' feelings about mental illness and retardation and other mitigating circumstances, to ask jurors if they would automatically vote for the death penalty in a first-degree murder case, and to ask jurors if they would consider mitigating circumstances when determining defendant's sentence.

**Am Jur 2d, Jury § 197.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

3. **Jury § 123 (NCI4th)— capital case—jury voir dire—previous criminal record—automatic vote for death penalty— question properly excluded**

Defendant's question to a prospective juror as to whether she felt "that a person should always be given the death penalty if he has a previous criminal record and has been convicted of first-degree murder" was an attempt to determine what kind of verdict the juror would render under certain circumstances not yet in evidence, and the trial court did not abuse its discretion in sustaining the State's objection to this question as phrased where the juror had already stated that she could consider mitigating circumstances in deciding whether to vote for life imprisonment or the death penalty and that she would not automatically vote for the death penalty for someone convicted of first-degree murder.

**Am Jur 2d, Jury § 197.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

**STATE v. SKIPPER**

[337 N.C. 1 (1994)]

Propriety, on voir dire in criminal case, of inquiries as to juror's possible prejudice if informed of defendant's prior convictions. 43 ALR3d 1081.

4. **Jury § 141 (NCI4th)— capital case—jury voir dire—meaning of life imprisonment—possibility of parole—questions properly excluded**

The trial court did not err in refusing to permit defendant to question prospective jurors in a capital trial about their views on the meaning of life imprisonment and the possibility of parole.

Am Jur 2d, Jury § 197.

Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.

5. **Criminal Law § 395 (NCI4th); Jury § 194 (NCI4th)— capital punishment views—questions by trial judge—no impartiality in favor of State**

The trial judge did not act impartially in favor of the State in determining challenges for cause of prospective jurors in a capital trial based on their capital punishment beliefs by the manner in which he questioned a juror who gave equivocal answers about her beliefs or by asking jurors being questioned by defendant if they could follow the law as given to them where the record shows that the trial judge treated jurors challenged by the State and the defense in the same manner by asking the jurors questions to determine if they would in fact be substantially impaired by their views for or against the death penalty and if they could follow the law, and that the trial judge also intervened on occasion to clarify and explain the law when jurors were confused.

Am Jur 2d, Jury §§ 265 et seq.; Trial § 117.

Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

6. **Homicide § 552 (NCI4th)— first-degree murder—premeditation and deliberation—brain disorder—intoxication—lack of bad relationship—instruction on second-degree murder not required**

The evidence of premeditation and deliberation was not equivocal in a prosecution of defendant for two first-degree mur-

ders so as to require the trial court to instruct the jury on second-degree murder where it tended to show that the female victim and defendant did not get along; they had an argument at the female victim's home and she did not want defendant to come to her home again; neither victim did anything to legally provoke defendant, but defendant pulled a semiautomatic rifle from under a car seat and killed the victims with fragmentation bullets known for their destructive power; defendant shot one victim, paused momentarily, stated "you too," and shot the second victim; both victims were wounded multiple times; as defendant left the crime scene, he asked his companion, "did I get them" both; and defendant proceeded to dispose of the gun and ammunition and then left town. Evidence that defendant was mildly retarded and suffered from organic brain disorder was not presented to the jury until the sentencing phase and was thus not a factor that could support a second-degree murder instruction. Furthermore, the evidence did not indicate the lack of a bad relationship between the female victim and defendant which would support an instruction on second-degree murder, and evidence of defendant's intoxication was insufficient to support an instruction on second-degree murder where it established that he was not visibly intoxicated, that defendant chose not to drive a vehicle, and that he had had something to drink that day, but there was no evidence as to how much he had had to drink or over what period of time he had been drinking.

**Am Jur 2d, Homicide §§ 525 et seq.**

7. **Criminal Law § 429 (NCI4th)— capital case—jury argument—defendant's failure to testify—error cured by court's actions**

Any possible error created by the prosecutor's jury argument references to defendant's failure to testify in a capital trial was cured when the trial court sustained defendant's objection, the comments were both withdrawn and stricken from the record, the trial court then instructed the jury to "disregard the last argument of the prosecutor," and the trial court charged during its instructions that defendant had a right not to testify and that his silence was not to influence the jury's decision in any way. Assuming *arguendo* that the trial court's actions were insufficient to cure the error, the evidence of defendant's guilt was so overwhelming that the error was harmless beyond a reasonable doubt.

**Am Jur 2d, Trial §§ 237-243.**

**Violation of federal constitutional rule (*Griffin v. California*) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.**

8. **Evidence and Witnesses § 3015 (NCI4th)— cross-examination—prior conviction—date of crime—question properly excluded**

   In a capital trial in which a witness admitted on cross-examination by defense counsel that he had been convicted of four counts of common law forgery, the date he was convicted, that he had received five years' probation, and that he had violated his probation, the trial court did not err by excluding defendant's question as to the date on which the witness had committed a particular act of forgery. Assuming *arguendo* that defendant should have been allowed to ask the witness the date on which he committed a specific crime, the error was harmless because the date could not add any impeachment value to the information the jury already had about the prior conviction. N.C.G.S. § 8C-1, Rule 609(a).

   **Am Jur 2d, Witnesses §§ 581 et seq.**

   **Comment Note.—Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution. 20 ALR2d 1421.**

9. **Criminal Law § 414 (NCI4th)— defendant's introduction of evidence—loss of right to open and close arguments—no coercion by trial court**

   The trial court did not coerce defendant into introducing evidence so that he lost his right to open and close the final argument where the prosecutor objected to defendant's use of a photograph to help illustrate a witness's testimony during cross-examination unless it was introduced into evidence; the court sustained the objection and defendant immediately asked to introduce the photograph into evidence; the trial court asked defendant if he understood that he was now offering evidence and defendant responded that he understood; the court allowed the photograph into evidence; the photograph was shown to the jury while the witness answered questions posed by defendant; and defendant used the photograph to impeach the witness. Even

if the photograph had not been admitted into evidence, defendant would still have lost his right to open and close jury argument because he also introduced two depositions and a diagram of the crime scene. Rule 10, General Rules of Practice for the Superior and District Courts.

**Am Jur 2d, Trial § 213.**

10. **Homicide § 489 (NCI4th)— premeditation and deliberation—instructions—lack of provocation**

The trial court's instruction that the jury could infer premeditation and deliberation from circumstances such as "lack of provocation" could not have confused the jury because it did not explain the difference between legal and ordinary provocation, did not constitute an impermissible expression of judicial opinion on the evidence, and did not impermissibly shift the burden of proof to defendant.

**Am Jur 2d, Homicide § 501.**

11. **Homicide § 489 (NCI4th)— premeditation and deliberation—instructions—inference from threats—no plain error**

The trial court's instruction that "threats" of the defendant may support an inference of premeditation and deliberation, if erroneous because not supported by the evidence, was not plain error where the evidence supported a finding of premeditation and deliberation, and defendant failed to meet his burden of showing that, absent the word "threats" in the instruction on premeditation and deliberation, the jury would probably have reached a different verdict.

**Am Jur 2d, Homicide § 501.**

12. **Evidence and Witnesses § 1694 (NCI4th)— autopsy photographs—relevancy to show premeditation and deliberation**

Seven autopsy photographs of the two victims were properly admitted in this first-degree murder prosecution, although it was uncontradicted that the victims were killed by multiple gunshot wounds from a semiautomatic rifle and that defendant was involved in the shooting, since they were not excessive, they helped illustrate a pathologist's testimony, and they were relevant and probative to show premeditation and deliberation. Furthermore, the trial court did not err by finding that the prejudicial effect of the photographs did not outweigh their probative value.

Am Jur 2d, Homicide §§ 417 et seq.

Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.

13. Homicide § 659 (NCI4th)— instruction on voluntary intoxication—defendant's burden of production—no due process violation

Defendant's due process rights were not violated by his burden of producing evidence that he was so intoxicated that he could not form a premeditated and deliberated intent to kill in order to be entitled to an instruction on the defense of voluntary intoxication since the jurors were not restricted from considering evidence of intoxication in determining whether the State satisfied them beyond a reasonable doubt as to all elements of first-degree murder, including premeditation and deliberation and intent to kill, if defendant failed to satisfy the burden of production necessary for an instruction on voluntary intoxication, and the State's burden of proving first-degree murder beyond a reasonable doubt was in no way reduced by the burden of production defendant must satisfy in order to receive a voluntary intoxication instruction.

Am Jur 2d, Homicide § 517.

14. Homicide § 669 (NCI4th)— voluntary intoxication instruction—insufficient evidence

The evidence in a capital trial was insufficient to require an instruction on voluntary intoxication where it showed only that defendant had been drinking for some time during the day of the murder and that he did not want to drive because he had been drinking, but there was no evidence that defendant looked drunk or that he was having difficulty speaking or walking, and no evidence as to how much defendant had actually drunk.

Am Jur 2d, Homicide § 517.

15. Evidence and Witnesses § 2791 (NCI4th)— question about telling truth—properly excluded

The trial court did not err by refusing to permit defendant to ask a witness on redirect examination in a capital sentencing proceeding whether he was "telling this jury the truth" because the credibility of a witness is for the jury to decide. Even if the trial

court erred by sustaining the objection to this question, the error was harmless because the witness had already affirmed that he would tell the truth, and the question was redundant.

**Am Jur 2d, Witnesses §§ 426 et seq.**

**16. Evidence and Witnesses § 2906 (NCI4th)— redirect examination—exceeding scope of cross-examination—objection sustained—answer not stricken—harmless error**

The trial court in a capital sentencing proceeding did not err by sustaining the State's objection to a question defendant asked a witness on redirect as to the name of the church for which he was the minister where this question went beyond the scope of cross-examination, which made no mention of the witness's profession. In any case, there was no error because the witness answered the question, there was no motion to strike or admonishment of the jury to disregard the answer, and defendant thus received the benefit of the evidence sought. Furthermore, any error in sustaining the objection to this question was harmless error because determining the name of the church the witness worked for did not bolster his credibility.

**Am Jur 2d, Witnesses § 425.**

**17. Criminal Law § 1068 (NCI4th)— capital sentencing proceeding—exclusion of testimony—no due process violation**

Defendant's due process rights were not violated when the trial court in a capital sentencing proceeding refused to permit defendant to ask a witness on redirect (1) if he was telling the truth, and (2) for what church he was a minister. The questions were incompetent under traditional evidentiary standards, and defendant's due process rights were not implicated because the testimony sought did not directly reflect on defendant's guilt or involvement in the crime for which he had been convicted.

**Am Jur 2d, Criminal Law § 598.**

**18. Criminal Law § 680 (NCI4th)— mitigating circumstances— peremptory instructions—necessity for request**

Where defendant requested that peremptory instructions be given only for the mitigating circumstances dealing with mental and emotional impairment and defendant's capacity to appreciate the criminality of his conduct and to conform his conduct to the law, the trial court did not err in failing to give peremptory

instructions as to other uncontroverted statutory and nonstatutory mitigating circumstances.

**Am Jur 2d, Criminal Law § 628.**

19. **Criminal Law §§ 860, 1322 (NCI4th)— capital sentencing proceeding—refusal to instruct on parole eligibility and concurrent sentences—jury question during deliberations—proper instruction**

The trial court correctly denied defendant's request to include in the jury charge in a capital sentencing proceeding for two murders an instruction that a life sentence means that defendant may be eligible for parole in twenty years and that defendant could be sentenced to consecutive life sentences so that he would not be eligible for parole for forty years. Furthermore, when the jury sent out a question asking about parole eligibility and concurrent sentences, the trial court properly instructed the jury that eligibility for parole is not a proper matter for the jury and that in considering life imprisonment, "you should determine the question as though life imprisonment means exactly what the statute says: imprisonment for life in the state's prison." N.C.G.S. § 15A-2002, which will require the trial court to instruct the jury in a capital sentencing proceeding concerning parole eligibility of a defendant sentenced to life, applies prospectively after its effective date, 1 October 1994, and thus does not apply in this case.

**Am Jur 2d, Trial §§ 100, 890.**

**Procedure to be followed where jury requests information as to possibility of pardon or parole from sentence imposed. 35 ALR2d 769.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**Jury's discussion of parole law as ground for reversal or new trial. 21 ALR4th 420.**

20. **Criminal Law § 1322 (NCI4th)— capital sentencing proceeding—parole eligibility not mitigating—instruction not required**

An instruction on parole eligibility was not necessary as mitigating evidence in light of the prosecutor's argument stressing defendant's potential for future dangerousness because parole eligibility is not mitigating since it does not reflect on any aspect

of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

**Am Jur 2d, Trial §§ 888 et seq.**

21. **Criminal Law § 1355 (NCI4th)— capital sentencing—mitigating circumstance—no significant criminal history—instruction not required**

The trial court did not err by failing to submit the mitigating circumstance that defendant had no significant history of prior criminal activity where the State presented evidence that defendant had been convicted of assault with a deadly weapon inflicting serious bodily injury in 1978, 1982, and 1984; the jury found as an aggravating circumstance that defendant had been previously convicted of a felony involving the use or threat of violence to a person; and no rational juror could have found that defendant had no significant history of prior criminal activity.

**Am Jur 2d, Criminal Law §§ 598, 599.**

22. **Criminal Law §§ 1323, 1362 (NCI4th)— statutory mitigating circumstances—instructions—determination of mitigating effect**

The statement in the trial court's instructions on the statutory mitigating circumstance of age that "the mitigating effect of the age of the defendant is for you to determine" did not allow the jury to "refuse to consider, as a matter of law," the evidence about age as a mitigating circumstance in violation of *Eddings v. Oklahoma,* 455 U.S. 104, and was not improper. Moreover, the evidence was contradictory as to this mitigating circumstance and the jury's failure to find that this circumstance existed did not show that the jury interpreted this instruction to mean that it could "refuse to consider" this circumstance where there was evidence that defendant, whose chronological age was forty-eight, had the mental age of a six-year-old child, but there was also evidence that defendant had been married, ran his own business, and supported himself and his children.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 888 et seq.**

**23. Criminal Law § 1323 (NCI4th)— nonstatutory mitigating circumstances—instructions—determination of mitigating value**

The trial court's instructions which permitted the jury to consider whether nonstatutory mitigating circumstances in fact had mitigating value were not erroneous where the instructions allowed the jury to consider all of the evidence in mitigation.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 888 et seq.**

**24. Criminal Law § 1323 (NCI4th)— mitigating circumstances—consideration of circumstances found by other jurors—instruction not constitutionally required**

There is no constitutional requirement that a juror must consider a mitigating circumstance found by another juror to exist. What is constitutionally required is that jurors be individually given the opportunity to consider and give weight to whatever mitigating evidence they deem to be valid. Therefore, the trial court did not err by failing to instruct the jury that once one juror finds a mitigating circumstance to exist, all jurors must consider that circumstance when reaching their sentencing decision, even if a juror did not believe that mitigating circumstance existed.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 888 et seq.**

**25. Criminal Law § 1323 (NCI4th)— consideration of mitigating circumstances—instructions—use of "may"**

The trial court's instruction that each juror "may" consider mitigating circumstances that juror found to exist when weighing the aggravating and mitigating circumstances did not allow some jurors to disregard relevant mitigating evidence they had earlier found to exist and fully comported with *McKoy v. North Carolina*, 494 U.S. 433, where the court also instructed that the evidence in mitigation *must* be weighed against the evidence in aggravation.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 888 et seq.**

**26. Criminal Law § 1348 (NCI4th)— capital sentencing—instructions defining mitigating circumstance—jury not improperly restricted**

The jury in a capital sentencing proceeding was not restricted from considering any evidence that may have lessened

defendant's sentence, whether it be evidence that was directly based on defendant's character or evidence that related to the actual murders, where the trial court defined a mitigating circumstance as facts "which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first-degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first-degree murders," and the trial court also instructed that the jury had a duty "to consider as a mitigating circumstance any aspect of the defendant's character and any of the circumstances of this murder that the defendant contends is a basis for a sentence less than death and any other circumstances arising from the evidence which you deem to have mitigating value."

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 888 et seq.**

27. **Criminal Law § 1347 (NCI4th)— capital sentencing— course of conduct aggravating circumstance—sufficiency of evidence**

The trial court properly submitted the course of conduct aggravating circumstance to the jury in a capital sentencing proceeding for two murders where the evidence tended to show that defendant pulled a semiautomatic rifle from under the seat of his truck and fired multiple shots at the female victim; he then said "you too" and shot the male victim; as the truck pulled away, defendant asked the driver if he got them both; and the crimes thus occurred within moments of each other at the same location and by use of the same *modus operandi*.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 888 et seq.**

28. **Criminal Law § 1363 (NCI4th)— capital sentencing— requested nonstatutory mitigating circumstances—combining of circumstances**

The trial court did not err by failing to submit separately and independently each nonstatutory mitigating circumstance requested in writing by defendant where some of the requested circumstances were combined by the trial court on the written recommendation form; all of the requested circumstances were subsumed by the circumstances submitted; and the jury was

required to address every point brought forward in defendant's written request. Assuming *arguendo* that the trial court erred by not giving the exact instructions requested by defendant, such error was harmless beyond a reasonable doubt where it is clear that the jury was not prevented from considering any potential mitigating evidence.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 888 et seq.**

**29. Constitutional Law § 370 (NCI4th)— mentally retarded defendant—death penalty not unconstitutional**

Imposition of the death penalty on defendant was not unconstitutional because he has suffered lifelong organic brain damage and is mentally retarded since the U.S. Supreme Court has held that the Eighth Amendment does not categorically prohibit the infliction of the death penalty on a person who is mentally retarded, and the N.C. Supreme Court has affirmed the death penalty in cases where defendants' IQ test scores were similar to or lower than defendant's IQ test score of 69.

**Am Jur 2d, Criminal Law § 628.**

**Propriety of imposing capital punishment on mentally retarded individuals. 20 ALR5th 177.**

**30. Jury § 261 (NCI4th)— peremptory challenges—death penalty views—constitutionality**

It was not unconstitutional to permit the prosecutor in a capital case to peremptorily challenge jurors who expressed reservations about the death penalty.

**Am Jur 2d, Jury §§ 233 et seq.**

**31. Criminal Law § 1327 (NCI4th)— capital sentencing— instruction on duty to recommend death penalty**

The Pattern Jury Instruction imposing a duty upon the jury to return death if the mitigating circumstances are insufficient to outweigh the aggravating circumstances is not unconstitutional.

**Am Jur 2d, Trial §§ 888 et seq.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

**32. Jury § 103 (NCI4th)— capital trial—denial of individual voir dire and sequestration**

The trial court did not abuse its discretion in denying defendant's request for individual voir dire and sequestration of prospective jurors in this capital trial.

**Am Jur 2d, Jury § 197.**

**33. Criminal Law § 1318 (NCI4th)— capital trial—preliminary instructions**

The trial court did not err by denying defendant's request that the court give specific instructions, written by defendant, about the procedures involved in a capital punishment proceeding prior to the beginning of jury selection where the trial court gave preliminary jury instructions pursuant to the Pattern Jury Instructions.

**Am Jur 2d, Trial §§ 888 et seq.**

**34. Criminal Law § 1298 (NCI4th)— constitutionality of death penalty statute**

The North Carolina death penalty statute is not unconstitutional.

**Am Jur 2d, Criminal Law § 628.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

**35. Criminal Law § 1326 (NCI4th)— mitigating circumstances—burden of proof**

The trial court did not err by instructing the jury in a capital sentencing proceeding that defendant had the burden of proving the mitigating circumstances by a preponderance of the evidence.

**Am Jur 2d, Trial §§ 888 et seq.**

**36. Criminal Law § 1373 (NCI4th)— first-degree murders— death sentences not disproportionate**

Sentences of death imposed upon defendant for two first-degree murders are not excessive or disproportionate to the penalty imposed in similar cases considering both the crimes and the defendant where defendant was convicted of both murders on the theory of premeditation and deliberation; the jury found as

**STATE v. SKIPPER**

[337 N.C. 1 (1994)]

aggravating circumstances that defendant had previously been convicted of a felony involving the use of violence to the person and that the murders were part of a course of conduct that included crimes of violence to others; defendant had been convicted on three previous occasions of inflicting serious injury with a deadly weapon by shooting one person in the back, severing the hand of another with a knife, and shooting another in the chest; and the evidence showed that defendant, without provocation, shot the two victims numerous times with a semiautomatic rifle containing fragmentation bullets, left them lying on the ground, and never attempted to get them any help. Defendant's sentences were not disproportionate because defendant has a low IQ and the jury found that defendant was mentally or emotionally disturbed when the crimes were committed and that his capacity to appreciate the criminality of his conduct was impaired.

**Am Jur 2d, Criminal Law § 628.**

Chief Justice Exum concurring in the result.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two sentences of death entered by Britt, J., at the 4 February 1991 Special Criminal Session of Superior Court, Bladen County. Heard in the Supreme Court 1 February 1994.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

On 25 August 1990, Ailene Pittman and her grandson Nelson Fipps, Jr., were shot and killed while standing in Ms. Pittman's front yard. The evidence showed that on 25 August 1990, defendant, Sherman Skipper, and Mark Smith drove to Ms. Pittman's home. They both had been drinking. Defendant had been dating Ms. Pittman and wanted to talk to her. Mr. Smith was driving defendant's truck. Defendant and Ms. Pittman talked for fifteen to twenty minutes, standing by the front door to Ms. Pittman's home. Defendant then went back to the truck, got in, and told Mr. Smith to drive away. Ms. Pittman approached the truck and told Mr. Smith not to bring

defendant back to her home. When Mr. Smith began backing the truck out of the driveway, defendant reached under the seat of the truck and pulled out a semiautomatic rifle containing fragmentation bullets. He then proceeded to shoot Ms. Pittman, stopped shooting, said "you too," and then shot Nelson Fipps, who was standing in the driveway. The two men then drove away from the home and spent a week on the run. Mr. Smith finally turned himself in to the police and told them where defendant could be found.

Defendant was found guilty of first-degree murder of both Ms. Pittman and Mr. Fipps and was sentenced to death for each murder. The jury found that defendant had previously been convicted of three assaults with a deadly weapon inflicting serious injury and that he had murdered each of his current victims during a course of conduct involving violence to the other. They also found that he was mentally and emotionally disturbed when the murders were committed and that his ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

Defendant sets forth thirty-one assignments of error in a 244-page brief. Additional facts will be addressed as necessary for the disposition of these issues.

### JURY SELECTION ISSUES

[1] Defendant begins by arguing that the trial court committed reversible error in excusing Juror Shirley Clark for cause, based on that juror's feelings about the death penalty. Defendant argues that the trial court erred by not allowing defendant to question the juror. He also argues that the trial court failed to adequately question the juror before determining that the juror should be excused for cause. Defendant argues that, because of this, he was denied his rights to a fair and impartial jury, due process of law, and freedom from cruel and unusual punishment.

The standard for determining whether a prospective juror may be properly excused for cause for his views on capital punishment is whether those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *State v. Syriani,* 333 N.C. 350, 369, 428 S.E.2d 118, 128, *cert. denied,* ——U.S. ——, 126 L. Ed. 2d 341 (1993), *reh'g denied,* —— U.S. ——, 126 L. Ed. 2d 707 (1994); *accord State v. Davis,* 325 N.C. 607, 621-22, 386 S.E.2d 418, 425 (1989), *cert. denied,* 496 U.S. 905, 110 L. Ed. 2d 268 (1990).

Defendant argues that it did not clearly appear that juror Clark was biased and that some of the juror's answers were equivocal; thus, the prosecutor's challenge for cause should have been denied. This Court has noted that a prospective juror's bias may not always be " 'provable with unmistakable clarity [and,] [i]n such cases, reviewing courts must defer to the trial court's judgment concerning whether the prospective juror would be able to follow the law impartially.' " *Syriani*, 333 N.C. at 370, 428 S.E.2d at 128 (quoting *State v. Davis*, 325 N.C. at 624, 386 S.E.2d at 426) (alteration in original).

The United States Supreme Court has also noted that it is sometimes difficult to establish total bias against the death penalty with "unmistakable clarity."

> [M]any veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where a trial judge is left with a definite impression that a prospective juror would be unable to faithfully and impartially apply the law.

*Wainwright v. Witt*, 469 U.S. 412, 425-26, 83 L. Ed. 2d 841, 852 (1985) (footnote omitted).

The transcript reveals that juror Clark stated that while she thought the death penalty may be necessary in today's society, she had personal convictions and scruples against the death penalty because she was a Christian. The prosecutor asked Ms. Clark many questions, trying to determine if the juror could impose the death penalty in some situations. The prosecutor explained in great detail the procedure that must be followed before a jury could impose the death penalty. After hearing how the law worked in regard to finding aggravating and mitigating circumstances and balancing the circumstances, the juror still stated that she was not sure whether she could impose the death penalty. The juror stated that she would try her best to be fair, but she also told the prosecutor two times that her scruples and Christian beliefs would substantially impair her ability to consider the death penalty. The prosecutor then challenged this juror for cause.

Before dismissing the juror for cause, the trial judge questioned her extensively. Juror Clark stated that she could impose the death

penalty under some circumstances but then said that her scruples were such that she would be prevented or substantially impaired in the performance of her duty as a juror in accordance with her oath and the instruction of the Court. Here, as in *Syriani*, the juror seemed to give conflicting answers; nevertheless, her responses revealed that her thoughts and views on the death penalty would substantially impair her ability to follow the instructions of the court as they related to her duty as a juror. While the juror's view on whether she could consider the death penalty as required by the law was not "unmistakably clear," the juror's responses to the questions were such that the trial judge could determine that the challenge for cause should be permitted. The juror could not affirmatively state that she could follow the instructions given by the court and do her duty as a juror. The trial court did not err in excusing juror Clark for cause.

Defendant also argues that he should have been given the chance to rehabilitate this juror under *State v. Brogden*, 334 N.C. 39, 430 S.E.2d 905 (1993). In *Brogden*, this Court held that when a judge denies a defendant the opportunity to rehabilitate under the mistaken impression that defendant is not permitted to rehabilitate a juror, then the decision of the trial court is reviewable and is not considered under an abuse of discretion standard. *Id.* at 46, 430 S.E.2d at 909. In *Brogden*, we held that further questioning should have been allowed because the juror may have answered the crucial question about whether his views would substantially prevent or impair his duties as a juror differently if rehabilitation had been allowed. In *Brogden*, unlike here, the juror never affirmatively stated that his feelings would substantially impair his ability to do his duty and follow instructions. In this case, the prosecution explained in detail the procedure that must be followed in determining a sentence of death. After this explanation, the juror affirmatively responded three times that she would be substantially impaired in following the law because of her beliefs.

We have noted that while defendants can be given the opportunity to rehabilitate a juror, this is not an entitlement; judges are not required to allow a defendant to attempt to rehabilitate jurors challenged for cause. A trial court in its sound discretion may refuse a defendant's request to attempt to rehabilitate certain jurors challenged for cause by the State. *See Brogden*, 334 N.C. at 44, 430 S.E.2d at 908; *State v. Taylor*, 332 N.C. 372, 391, 420 S.E.2d 414, 425 (1992).

We conclude that while juror Clark's answers were not entirely unequivocal, they were sufficiently equivocal to justify her being

**STATE v. SKIPPER**

[337 N.C. 1 (1994)]

excused for cause in the discretion of the trial judge, who heard the questions asked of, and the answers given by, the juror. In addition, we do not believe that defendant was incorrectly denied his right to rehabilitate. The sentencing process had been fully explained to the juror and she had responded in answer to the prosecutor's question that, based on her beliefs, she would be impaired in following this procedure. The judge did not deny the right to rehabilitate based on a misunderstanding that no such right exists, and there was no indication that the questioning of the juror would have done anything but make the situation more confusing.

[2] In defendant's second and fourth assignments of error, he argues that his right to a fair and impartial jury was violated because the trial court sustained the prosecutor's objections to certain questions. In his second assignment of error, defendant argues that he should have been allowed to ask questions regarding how jurors would be affected by evidence of mental impairment, age, and other mitigating circumstances. In his fourth assignment of error, defendant argues that it was error not to allow him to ask two jurors who sat on the jury if they would always sentence a person to death if he had a criminal record and had just been found guilty of first-degree murder.

Defendant argues that under *Morgan v. Illinois*, —— U.S. ——, 119 L. Ed. 2d 492 (1992), a defendant must be able to specifically inquire of each prospective juror whether that individual juror would be predisposed not to consider relevant mitigating evidence in determining the appropriate sentence.

The State argues that defendant's questions were a blatant attempt to stake out jurors. The State also notes that when defendant asked the jurors questions about certain characteristics without questioning them as to what kind of verdict they would render in a situation involving those certain characteristics, the questions were allowed and defendant was able to elicit the desired information.

First, we note that defendant was permitted to ask jurors if they could, in general, consider mitigating circumstances in deciding whether to vote for life imprisonment or the death penalty. Defendant was also allowed to ask jurors if they would automatically sentence a person to death and not consider life imprisonment as an option in every case where a person has been convicted of first-degree murder. It is these two particular propositions that are addressed in *Morgan v. Illinois*.

A review of the *voir dire* illustrates that the judge sustained the prosecutor's objection to defendant's asking if a juror would "consider" age, mental impairment, mental retardation, and family and employment background in reaching a decision. However, the record also reveals that defendant was allowed to ask, "If the Court instructs you that you should consider whether or not a person is suffering from a mental or emotional disturbance in deciding whether or not to give someone the death penalty, do you feel like you could follow that instruction?" Additionally, defendant was permitted to inquire generally into a juror's feeling about such issues as mental illness.

On numerous occasions, the court indicated that it would allow the question defendant was trying to ask if it was "rephrased" or if an "appropriate predicate" was set. On one occasion, the judge even told defendant, "[Y]ou may ask the juror if he will accept and follow the law as given to the jury by this Court as it relates to mitigating circumstances." It is clear that the judge would allow defendant to ask if a juror could follow the law but would not allow defendant to ask a hypothetical question regarding if a juror would consider a circumstance, not known to exist at that time, in reaching a decision.

A defendant should not be able          .

> to elicit in advance what the juror's decision will be under a certain state of the evidence or upon a given state of facts. . . . [S]uch questions tend to "stake out" the juror and cause him to pledge himself to a future course of action. This the law neither contemplates nor permits. The court should not permit counsel to question prospective jurors as to the kind of verdict they would render, or how they would be inclined to vote, under a given state of facts.

*State v. Vinson*, 287 N.C. 326, 336, 215 S.E.2d 60, 68 (1975), *sentence vacated*, 428 U.S. 902, 49 L. Ed. 2d 1206 (1976). In *State v. Hill*, 331 N.C. 387, 417 S.E.2d 765 (1992), *cert. denied*, —— U.S. ——, 122 L. Ed. 2d 684, *reh'g denied*, —— U.S. ——, 123 L. Ed. 2d 503 (1993), we noted that we would not allow questions that were intended to "stake out" jurors. *Id.* at 404, 417 S.E.2d at 772 (quoting *State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980)).          .

In *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418, we held that the question, "Would the fact that the defendant had no significant history of any criminal record, would that be something that you would consider important in determining whether or not to impose the

death penalty?" was impermissible. *Id.* at 621, 386 S.E.2d at 425. We noted that "[n]o evidence of defendant's criminal history had been introduced" during *voir dire*; thus, the question was "hypothetical and the trial court properly could view it as an impermissible attempt to indoctrinate a prospective juror regarding the existence of a mitigating circumstance." *Id.* In *State v. Yelverton*, 334 N.C. 532, 434 S.E.2d 183 (1993), the Court held that it was not error to refuse to allow defendant to ask jurors if they would find it impossible to vote for life imprisonment if torture or rape had also taken place during the murder. *Id.* at 541, 434 S.E.2d at 188. The Court noted that defendant was allowed to ask if jurors would automatically vote for death. The Court held that " '[j]urors should not be asked what kind of verdict they would render under certain named circumstances.' " *Id.* at 542, 434 S.E.2d at 188 (quoting *State v. Phillips*, 300 N.C. at 682, 268 S.E.2d at 455).

We recognize that the Supreme Court has held that some specific areas of bias may be explored in depth. In *Ham v. South Carolina*, 409 U.S. 524, 35 L. Ed. 2d 46 (1973), the Court held that a defendant must be able to inquire as to any racial bias a juror may have. However, the Court noted in *Ham* that not all factors for prejudice should be granted such absolute constitutional protection. The question of racial bias was necessary because it derived from a protection inherent in long-standing case law and the Fourteenth Amendment. However, it was not an abuse of the trial court's discretion to refuse to allow inquiry into other areas of bias, such as bias against people with beards. The Court noted its "inability to constitutionally distinguish possible prejudice against beards from a host of other similar prejudices." *Id.* at 528, 35 L. Ed. 2d at 51. In *Mu'Min v. Virginia*, 500 U.S. 415, 114 L. Ed. 2d 493 (1991), the Court again noted that a trial court has significant discretion in allowing inquiry into areas that might tend to show juror bias. *Id.* at 427, 114 L. Ed. 2d at 507. In *Mu'Min*, the Court noted that in order for a question to be constitutionally compelled, the inability to ask the question must render the defendant's trial fundamentally unfair. *Id.* at 425-26, 114 L. Ed. 2d at 506.

We conclude that, in permitting defendant to inquire generally into jurors' feelings about mental illness and retardation and other mitigating circumstances, he was given an adequate opportunity to discover any bias on the part of the juror. The only restriction enforced by the court was whether a juror could "consider" a specific mitigating circumstance in reaching a decision. This restriction

was neither fundamentally unfair nor an abuse of the trial court's discretion. In addition, defendant was allowed to ask jurors if they would automatically vote for the death penalty in a first-degree murder case and if they could consider mitigating circumstances when determining defendant's sentence. We believe this satisfies the constitutional requirements of *Morgan* and does not violate the concerns set forth in *Ham*.

We conclude that there was no error in sustaining the prosecutor's objections to the questions at issue, as the manner in which they were phrased was erroneous and attempted to stake out jurors.

[3] Defendant also argues that the trial court erred when it refused to allow defendant to ask two jurors if they would always sentence a person to death if he has a previous criminal record and has been convicted of first-degree murder. We note first that defendant was prohibited from asking this question of only one juror who sat on the case. While, initially, an objection to the question was sustained in regard to juror Munroe, defendant rephrased the question after laying a foundation, and the question was permitted.

During the questioning of juror Howell, the following colloquy took place:

MR. GRADY [Defense Counsel]: Do you feel like everyone who has a previous criminal record and who's been convicted of first-degree murder should automatically be put to death?

MR. HICKS [Prosecuting Attorney]: Objection.

COURT: Sustained.

Rephrase, please.

MR. GRADY: Do you feel that a person should always be given the death penalty if he has a previous criminal record and has been convicted of first-degree murder?

MR. HICKS: Objection.

COURT: Sustained.

Rephrase.

MR. GRADY: Do you feel like a person—Do you feel like you would convict a person—Strike that question.

Do you feel like you would convict a person solely because of their past lifestyle?

JUROR: No.

**STATE v. SKIPPER**

[337 N.C. 1 (1994)]

Defendant now argues that the trial court committed reversible error and abused its discretion by preventing him from asking the specific question concerning a defendant with a prior criminal record. Defendant again begins his argument by stating that this is error under *Morgan v. Illinois,* —— U.S. ——, 119 L. Ed. 2d 492. Defendant argues that the question needed to be asked in order to determine if the juror would automatically vote for the death penalty and if she would consider mitigating evidence. This particular juror had already stated that she could consider mitigating circumstances in deciding whether to vote for life imprisonment or the death penalty and had also stated in response to a question that she did not feel that "in every case where somebody's been convicted of first-degree murder, that [she] would automatically sentence that person to death and not consider life imprisonment as an option." This is the extent of what is required by *Morgan.* Thus, the trial court did not err in sustaining the State's objection to the question as phrased.

Defendant also argues that the trial court's decision to sustain the objection to this question was arbitrary and an abuse of discretion. We conclude that the question as phrased was not proper; thus, it was not an abuse of discretion to sustain the objection to the question. As noted above, defendant was not barred from asking the question in any form, but instead was asked to "rephrase" the question, indicating that if properly put, it would be permissible. This was further illustrated by the *voir dire* of juror Munroe, who was questioned immediately after juror Howell. An objection to the same question, posed to juror Munroe, was sustained, and defendant was asked to rephrase the question. Defendant then asked the juror if he would consider mitigating circumstances in reaching his decision. The juror said "yes," and defendant next asked, "So even if a person's been convicted of first-degree murder and has a past criminal record, you could still consider mitigating circumstances in deciding whether to vote for life imprisonment or the death penalty; is that correct?" There was no objection, and juror Munroe answered the question.

It seems clear that had defendant proceeded in this manner with juror Howell, he would have been allowed to ask the particular question at issue. However, the manner in which the question was asked here: "Do you feel that a person should always be given the death penalty if he has a previous criminal record and has been convicted of first-degree murder?" was nothing more than an attempt to determine what kind of verdict a juror would render under certain named circumstances not yet in evidence. *See State v. Yelverton,* 334 N.C.

532, 542, 434 S.E.2d 183, 188; *State v. Hill,* 331 N.C. 387, 404, 417 S.E.2d 765, 772. We conclude that there was no reversible error or abuse of discretion in not allowing defendant to ask juror Howell this one particular question in the manner attempted by defendant.

[4] In his third assignment of error, defendant argues that the trial judge should have allowed him to question jurors about their views on the meaning of life imprisonment and the possibility of parole. Defendant notes that he made a motion to be allowed to question jurors concerning parole eligibility.

Defendant concedes that the issue concerning questions and instructions on parole eligibility and the meaning of life imprisonment has repeatedly been decided against him by this Court. *See State v. Green,* 336 N.C. 142, 157, 443 S.E.2d 14, 23 (1994); *State v. Lee,* 335 N.C. 244, 268, 439 S.E.2d 547, 558 (1994); *State v. Syriani,* 333 N.C. 350, 399, 428 S.E.2d 118, 145; *State v. Robbins,* 319 N.C. 465, 521, 356 S.E.2d 279, 312, *cert. denied,* 484 U.S. 918, 98 L. Ed. 2d 226 (1987). Defendant has failed to assert any convincing reason why this Court should depart from its prior decisions on the issue concerning the questioning of, or informing jurors about, the possible parole eligibility of defendant.

[5] Defendant next argues that the trial court led jurors who were opposed to the death penalty to say that they would be impaired in the performance of their duty and not be able to follow the law so that they could be challenged for cause, and persuaded jurors who favored the death penalty to say that they would not be impaired in the performance of their duties and could follow the law so that these jurors could not be challenged for cause. Defendant argues that this disparate treatment violated his right to an impartial and fair jury and was an abuse of discretion.

Defendant stresses once again that juror Clark should not have been excused for cause because her answers were equivocal as to whether she could impose the death penalty. Defendant argues that the trial judge questioned juror Clark in a way that elicited answers that would allow her to be challenged for cause. Defendant argues that the trial judge used leading questions that suggested a desired answer and tainted the reliability of this and other jurors' responses. Defendant also argues that the trial judge acted unfairly when he intervened during defendant's questioning of jurors who were strongly in favor of the death penalty. Defendant specifically complains of three occasions where the trial court in effect asked jurors being

questioned by the defendant if they could follow the law as given to them.[1] Defendant argues that the trial court's intervention in defendant's questioning defeated his ability to challenge these jurors for cause and thus represented an unevenhanded treatment of defendant.

In *State v. Quick*, 329 N.C. 1, 405 S.E.2d 179 (1991), the defendant argued that the trial court acted unfairly during jury selection by allowing the State's challenges for cause without further questioning, while denying defendant's challenges for cause on two occasions after inquiring whether the juror could follow the law as he was instructed. This Court, after determining that the trial court was merely clarifying and explaining the law to confused jurors and noting that the trial court allowed the defendant to continue questioning the juror after the court had intervened, held that such conduct on the trial judge's part was not error. *Id.* at 15, 405 S.E.2d at 188.

In the case at bar, the trial judge intervened on two occasions after the jurors indicated some confusion in understanding the question posed by defense counsel. On the third occasion brought into question by defendant, the trial court did not intervene during defendant's questioning but, after the juror had been challenged by the defendant for cause, asked him if he "would not consider life imprisonment under those circumstances, regardless of the instructions of the Court." The trial court was simply determining if the juror should be stricken for cause. His question to this juror was just as appropriate as those he asked of the jurors who were challenged for cause by the prosecutor. We conclude that in determining challenges for cause, the trial judge treated the prosecution and defense in the same manner and evidenced no partiality for one side or the other.

Our review of the record shows no "gross imbalance in the trial court's responses to defendant's inquiries." *State v. Artis*, 325 N.C. 278, 296, 384 S.E.2d 470, 480 (1989), *sentence vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991). The trial court treated jurors challenged by the State and the defense in the same manner, asking the jurors questions to determine if they would in fact be substantially impaired by their views for or against the death penalty and if they could follow the law. The trial

1. One juror was asked if he could "accept and follow the law as given to you by the Court in this case" and if he was saying "that you would not consider life imprisonment under those circumstances, regardless of the instructions of the Court." Another juror was asked, "if the Court instructs you that you're to consider all of the evidence, would you follow those instructions?"

court also intervened on occasion to clarify and explain the law when jurors were confused. We have carefully reviewed the entire record of jury selection for evidence of bias or unfair treatment and hold that there was none and that there was no abuse of discretion on the part of the trial court.

## GUILT-INNOCENCE PHASE ISSUES

[6] Next, defendant argues that the trial court erred in not giving an instruction on second-degree murder because the evidence of premeditation and deliberation was equivocal. He argues that *Beck v. Alabama*, 447 U.S. 625, 65 L. Ed. 2d 392 (1980), and *Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555 (1991), stand for the proposition that a lesser included instruction was required in this case.

Defendant argues that evidence of intoxication, lack of evidence of a bad relationship between the parties, and the fact that he was mildly retarded and had an organic brain disorder establish the necessary elements to support a finding of second-degree murder. We disagree.

> The test in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and whether there is any conflicting evidence relating to any of these elements.

*State v. Leroux*, 326 N.C. 368, 378, 390 S.E.2d 314, 322, *cert. denied*, 498 U.S. 871, 112 L. Ed. 2d 155 (1990). A trial court may not "premise a second-degree murder instruction on the possibility that the jury will accept some of the State's evidence while rejecting other portions of the State's case." *Id.* at 379, 390 S.E.2d at 322. Neither *Beck v. Alabama* nor *Schad v. Arizona* stands for the proposition that the lesser included offense should be more freely given in capital cases. In fact, they support the proposition that the lesser instruction should not be given indiscriminately. *See State v. Strickland*, 307 N.C. 274, 286, 298 S.E.2d 645, 654 (1983) (language of United States Supreme Court in *Beck* supports the position that lesser offense instructions should not be given indiscriminately or automatically, but only when warranted by the evidence), *modified on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986).

First-degree murder is "the unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Bonney,*

329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." State v. Conner, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." Id. at 635, 440 S.E.2d at 836.

A careful review of the transcript shows that each and every element of first-degree murder is supported by the evidence and that the evidence would not support a finding of second-degree murder. The evidence showed that defendant and the victim Pittman did not get along. There was evidence that defendant had recently struck Pittman and that she told Mark Smith never to bring defendant back to her house. This indicates that defendant and Pittman were not on friendly terms and had not just had a normal, peaceful conversation at Pittman's home prior to the shooting. In addition, neither victim did anything to legally provoke defendant, yet defendant pulled a semi-automatic weapon from under the seat and killed the victims with fragmentation bullets known for their destructive power. Defendant shot one victim, paused momentarily, stated "you too," and shot the second victim. Both victims were wounded multiple times. Pittman's body had thirty-four wounds, and Fipps' body had two. As defendant and Mark Smith left the crime scene, defendant asked Smith, "did I get them" both. Defendant proceeded to dispose of the evidence of the crime (the gun and ammunition) and then left town. Thus, there was sufficient evidence to show premeditation and deliberation.

Additionally, the evidence would not support an instruction for second-degree murder. First, we note that the evidence that defendant was mildly retarded and suffered from organic brain disorder was not presented to the jury until the sentencing phase, so it was not a factor that could support a second-degree murder instruction. In addition, the evidence did not indicate a lack of a bad relationship between Pittman and defendant. The evidence showed that Pittman and defendant may have had an earlier argument and that Pittman did not want defendant to come to her home again. Finally, the evidence that the defendant was so intoxicated that he could not premeditate or deliberate was based solely on the fact that defendant chose not to drive a vehicle and had had something to drink that day. There was no evidence as to how much he had had to drink that day, nor over what

period of time. The evidence did establish that defendant was not visibly intoxicated. This evidence would not support an instruction for second-degree murder.

We conclude that the trial court did not err by not instructing the jury on the lesser included offense of second-degree murder.

[7]    Defendant next argues that the trial court erred in denying defendant's request for a mistrial after the prosecutor made a grossly improper argument referring to defendant's failure to testify.

During the prosecutor's closing argument to the jury, he stated:

> You [the jury] have to decide if you believe [Mark Smith]. He turned himself in. Did Sherman Skipper [defendant] turn himself in? He talked about how he was there. Did Sherman Skipper do that? He talked about the way Ailene Pittman slumped down—

Defendant immediately objected to this argument, and the statement was withdrawn and stricken. Defendant then asked for a mistrial. The trial court denied this request. The trial court then reiterated that defendant's objection was sustained and instructed the jury to "disregard the last argument" of the prosecutor.

Defendant now argues that the trial court erred because, when the court sustained defendant's objection, it did not specifically instruct the jury that defendant has a right not to testify and that defendant's failure to testify cannot be held against him in any way. It is well established that a prosecutor may not refer to defendant's failure to testify because this " 'violates an accused's constitutional right to remain silent.' " *State v. Reid*, 334 N.C. 551, 554, 434 S.E.2d 193, 196 (1991) (quoting *State v. Randolph*, 312 N.C. 198, 205-06, 321 S.E.2d 864, 869 (1984)).

When the State comments on a defendant's failure to testify, the improper comment is "cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the accused to offer himself as a witness." *State v. McCall*, 286 N.C. 472, 487, 212 S.E.2d 132, 141 (1975). In *McCall*, the Court noted that an instruction to the jury before it began deliberating—that defendants had no burden and were not required to produce evidence, testimony, or witnesses—was insufficiently curative because it was an incomplete statement of the pertinent rule of law in that it neglected to advise the jury that a defendant's failure to testify created no presumption against him. *Id.*

In *State v. Williams*, 305 N.C. 656, 675, 292 S.E.2d 243, 255, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983), this Court concluded that a court's instructions cured any error in a prosecutor's comments about a defendant's failure to testify. In *Williams*, the court immediately sustained the defendant's objection to the prosecutor's comment and instructed the jury not to consider any reference to this proposition. "The court later instructed the jury that defendant's decision not to testify created no presumption against him and was not to influence [its] decision in any way." *Id.*

In the case at bar, the trial court sustained defendant's objection, and the comments were both withdrawn and stricken from the record. The trial court then instructed the jury to "disregard the last argument" of the prosecutor. In addition, unlike *McCall*, during jury instructions, the trial court here also charged that "the defendant in this case has not testified. The law of North Carolina gives him this privilege. This same law also assures him that his decision not to testify creates no presumption against him. Therefore, his silence is not to influence your decision in any way."

We conclude that the prosecutor's withdrawal and striking of his statement and the trial court's further instruction cured any possible error created by the prosecutor's statement. *See State v. Williams*, 305 N.C. at 675, 292 S.E.2d at 255; *see also State v. Monk*, 286 N.C. 509, 516, 212 S.E.2d 125, 131 (1975) (improper comment on defendant's failure to testify may be cured by an instruction from the court that the argument is improper, "followed by prompt and explicit instructions to the jury to disregard it"); *State v. Lindsay*, 278 N.C. 293, 295, 179 S.E.2d 364, 365 (1971) (any error caused by prosecutor's remarks regarding defendant's failure to testify was removed by the trial court's "prompt and explicit instructions to the jury to disregard the reference").

Assuming *arguendo*, however, that the trial judge's instructions immediately after he sustained the objection and during the jury instruction were insufficient to cure the error, we conclude that the evidence of guilt in this case was so overwhelming that the error was harmless beyond a reasonable doubt. Defendant attempts to argue that such an error may never be harmless beyond a reasonable doubt. In *State v. Barber*, 317 N.C. 502, 511, 346 S.E.2d 441, 447 (1986), we concluded that even if arguments by a prosecutor regarding a defendant's failure to testify were improper, the trial court's decision to over-

rule the objection was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt. We conclude that the uncontradicted evidence that defendant shot the two victims, disposed of the evidence, and then fled from the state makes the statement of the prosecutor harmless beyond a reasonable doubt.

**[8]** Defendant next argues that the trial judge erred when he sustained the prosecutor's objections to defendant's cross-examination of a witness regarding the date of the witness' prior criminal conviction, punishment received for the conviction, and whether he had violated the terms of his probationary sentence. A review of the record indicates that the only question defendant asked for which he did not receive an answer at some time in the cross-examination was the date the actual common law forgery occurred.

Rule of Evidence 609(a) allows a party to attack the credibility of a witness with "evidence that he has been convicted of a crime punishable by more than 60 days confinement." N.C.G.S. § 8C-1, Rule 609(a) (1992). However, "[t]he permissible scope of inquiry into prior convictions for impeachment purposes is restricted . . . to the name of the crime, the time and place of the conviction, and the punishment imposed." *State v. Lynch*, 334 N.C. 402, 409, 432 S.E.2d 349, 352 (1993). Defendant here attempted to ask on what date the crime occurred.

> Strong policy reasons support the principle that ordinarily one may not go into the details of the crime by which the witness is being impeached. Such details unduly distract the jury from the issues properly before it, harass the witness and inject confusion into the trial of the case.

*State v. Finch*, 293 N.C. 132, 141, 235 S.E.2d 819, 824 (1977) (determined to apply to post-Rules cases in *State v. Garner*, 330 N.C. 273, 288-89, 410 S.E.2d 861, 870 (1991)).

A close review of the record indicates that the witness told defense counsel, without objection, that he had been convicted of violating probation and common law forgery. The witness also told defense counsel that he had received five years' probation for the common law forgery crime, which involved four counts of common law forgery. Defendant argues that he sought to elicit the nature of the witness' prior criminal offenses, the dates they were committed, the punishment he received for them, and the witness' compliance with the terms of his probation. However, the record indicates that

the only question defendant asked that the witness never gave an answer to was whether he had committed one particular act of common law forgery on a particular date. Defendant did not ask any specific questions about the nature of the witness' prior criminal offenses, beyond the name of the crimes. Nor did defendant ask the punishment that the witness had received for his probation violation. Also, defendant never asked the terms of the witness' probation.

We conclude that the trial court did not err in sustaining the prosecutor's objection to the question of when a particular act for which the witness was later convicted was committed.

Assuming *arguendo*, however, that defendant should have been allowed to ask the witness the date on which he committed a specific crime, we conclude that the error was harmless beyond a reasonable doubt. The jury knew when the witness was tried for his crime, the date he was convicted, and the name of the crime that he had been convicted of; the jury also knew that the witness had received five years' probation for this crime. We fail to see how the actual date on which one count of the crime occurred could add any impeachment value to the information about the prior conviction. Thus, we conclude that the failure to allow this question was harmless beyond a reasonable doubt.

[9] Defendant next argues that the court erred by coercing him into introducing a piece of evidence, the result of which was that he lost his right to open and close the final argument. We conclude that this argument is without merit.

Rule 10 of the General Rules of Practice for the Superior and District Courts states that "if no evidence is introduced by the defendant, the right to open and close the argument to the jury shall belong to him." In *State v. Hall*, 57 N.C. App. 561, 291 S.E.2d 812 (1982), Judge (now Justice) Webb noted:

> [W]e believe the proper test as to whether an object has been put in evidence is whether a party has offered it as substantive evidence or so that the jury may examine it and determine whether it illustrates, corroborates, or impeaches the testimony of the witness.

*Id.* at 564, 291 S.E.2d at 814.

Defendant attempted to offer a photograph of the crime scene into evidence to help "illustrate" the witness' testimony during cross-examination. The prosecutor objected to the use of this photograph

before the jury unless introduced into evidence. The court sustained the objection, and defendant immediately asked to introduce the photograph into evidence. The trial court asked defendant if he understood that he was now offering evidence. Defendant responded that he understood, and only then did the court allow the photograph to be received into evidence. A review of the transcript reveals that the trial court in no way coerced defendant to introduce the photograph.

Additionally, it is clear that the photograph was actually introduced into evidence. As noted above, defendant offered the photograph into evidence because the witness said it would help him illustrate his testimony. The photograph was then shown to the jury while the witness answered questions posed by defendant. In addition, defendant used the photograph to impeach the witness. We conclude that the photograph was actually offered into evidence; thus, defendant lost his right to open and close jury argument. *See State v. Reeb*, 331 N.C. 159, 180, 415 S.E.2d 362, 374 (1992); *State v. Hinson*, 310 N.C. 245, 257, 311 S.E.2d 256, 264, *cert. denied*, 469 U.S. 839, 83 L. Ed. 2d 78 (1984); *State v. Knight*, 261 N.C. 17, 30, 134 S.E.2d 101, 109 (1964).

Finally, we note that even if the photograph had not been introduced into evidence, defendant would still have lost his right to open and close jury argument because he introduced three other pieces of evidence during the trial: two depositions and a diagram of the crime scene.

We conclude that defendant's assignment of error is totally without merit.

[10] In defendant's next assignment of error, he argues that the trial court erred in instructing the jury that it could infer premeditation and deliberation from circumstances such as "lack of provocation of the victim." Defendant argues that this instruction misled the jury because it did not explain the difference between legal and ordinary provocation, it constituted an impermissible expression of judicial opinion on the evidence, and it tended to impermissibly shift the burden of proof to defendant on an element of an offense. We note that defendant did not object to the instruction at trial; thus, this issue will be analyzed under a "plain error analysis." *See State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983).

**STATE v. SKIPPER**

[337 N.C. 1 (1994)]

In *State v. Handy*, 331 N.C. 515, 527, 419 S.E.2d 545, 551 (1992), this Court addressed the same issues presented by the defendant here. In *Handy*, we concluded that defendant's assignment of error was without merit; we reach the same conclusion in this case.

First, we note that the trial court in this case properly instructed the jury that the State had the burden of proving beyond a reasonable doubt each and every element of first-degree murder, including the elements of premeditation and deliberation. The trial court never instructed that premeditation should be presumed and never expressed any opinion as to whether the State had proven lack of provocation. *See State v. Fowler*, 285 N.C. 90, 96, 203 S.E.2d 803, 807 (statement that jury may consider evidence of the absence of provocation in determining whether there was premeditation and deliberation does not amount to a judicial expression of opinion that there was no evidence of provocation), *sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1212 (1976).

In this case, the trial court instructed the jury with regard to premeditation pursuant to the Pattern Jury Instructions, stating:

> Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as the lack of provocation by the victim; the conduct of the defendant before, during, and after the killing; threats and declarations of the defendant; the brutal or vicious circumstances of the killing; and the manner in which or the means by which the killing is done.

In addition, the trial court instructed the jury that defendant did not act with deliberation if his intent to kill was formed "under the influence of some suddenly aroused violent passion."

We conclude that the instructions set forth by the trial court correctly placed the burden of proving premeditation and deliberation on the State. We also conclude that the instruction, that lack of provocation can be considered, could not have confused the jury. The jury could not have been confused about the difference between "adequate" or "legal" provocation and ordinary provocation because defendant was charged only with first-degree murder. No instruction was given as to second-degree murder or voluntary manslaughter; thus, specific definitions for provocation were not before the jury. Contrary to defendant's assertions, the jury could not have mistakenly concluded that defendant acted with premeditation and delibera-

tion simply because the evidence showed that defendant did not act in a heat of passion following adequate or legal provocation. The jury was specifically instructed that it could not find defendant guilty of premeditated and deliberated murder if he formed his intent to kill under the influence of some suddenly aroused violent passion. *See State v. Reid*, 335 N.C. 647, 669, 440 S.E.2d 776, 788 (1994); *State v. Handy*, 331 N.C. at 527, 419 S.E.2d at 551.

[11] Defendant also argues under this assignment of error that the premeditation and deliberation instruction should not have included the statement that "threats" of the defendant may be inferred to indicate premeditation and deliberation, as there was no evidence that defendant ever threatened the victims. We note again that this issue will be analyzed under plain error analysis because no objection was made to the instruction at trial. Thus, "defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different verdict." *State v. Thomas*, 332 N.C. 544, 563, 423 S.E.2d 75, 86 (1992).

In *State v. Lampkins*, 283 N.C. 520, 196 S.E.2d 697 (1973), this Court determined that "[a] trial judge should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence." *Id.* at 523, 196 S.E.2d at 699. We note that while the evidence here may not have supported the instruction regarding consideration of "threats" of defendant, this was one word in the middle of eleven pages of detailed jury instructions. The evidence here supported a finding of premeditation and deliberation based on the fact that defendant asked Smith to take him to the victims' home, talked to one of the victims, then got in his truck, pulled a semiautomatic rifle loaded with fragmentation bullets from under the seat, killed one victim, stated "you too," and killed the second victim. He then asked Smith, "did I get them," and proceeded to get rid of the evidence.

Defendant has not demonstrated that, absent the word "threats" in the instruction, the jury probably would have reached a different verdict. We hold that defendant has not met his burden under the plain error rule. *See State v. Faison*, 330 N.C. 347, 363, 411 S.E.2d 143, 152 (1991).

In conclusion, we hold that the inclusion of the phrase "lack of provocation" in the instruction on premeditation and deliberation did not confuse the jury, reflect an opinion of the trial court, or impermissibly shift the burden of proof to defendant. Additionally, we con-

**STATE v. SKIPPER**

[337 N.C. 1 (1994)]

clude that if it was error to instruct the jury that "threats" of the defendant may be considered an inference of premeditation and deliberation, it was not plain error.

[12] Defendant next argues that the trial court erred in admitting seven autopsy photographs into evidence over defendant's objection. Defendant argues that the photographs had no probative value as the fact that the victims were killed by multiple gunshots wounds from a semiautomatic rifle and that defendant was involved in the shooting was not controverted. In the alternative, defendant argues that any probative value of the photos is outweighed by the prejudicial effect. We conclude that neither of these arguments is valid.

"Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). Generally, photographs taken during an autopsy are admissible. *State v. Barnes*, 333 N.C. 666, 678, 430 S.E.2d 223, 230, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 336 (1993). In a first-degree murder case, autopsy photographs are relevant even when such factors as the identity of the victim or the cause of death are not disputed. *See State v. Kyle*, 333 N.C. 687, 701, 430 S.E.2d 412, 420 (1993); *State v. Barnes*, 333 N.C. at 678, 430 S.E.2d at 229; *State v. Bearthes*, 329 N.C. 149, 161, 405 S.E.2d 170, 177 (1991).

"A plea of not guilty places at issue all of the facts alleged in the indictment." *State v. Wall*, 304 N.C. 609, 621, 286 S.E.2d 68, 75 (1982). In this case, the State was attempting to prove first-degree murder by premeditation and deliberation. "Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence." *State v. Gladden*, 315 N.C. 398, 430, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 870, 93 L. Ed. 2d 166 (1986). The nature and number of the wounds and evidence that the murders were done in a brutal manner are circumstances from which premeditation and deliberation can be inferred. *Id.* at 431, 340 S.E.2d at 693.

The State introduced into evidence seven autopsy photographs showing different areas of the bodies where the victims had been struck by bullets. Two of the photographs showed wounds suffered by Ailene Pittman, and five of the photographs showed the wounds of Nelson Fipps. The State introduced the photographs during the testimony of the pathologist who performed the autopsy, to help illustrate

his testimony. Upon being admitted, the photographs were in fact used to illustrate and describe the numerous wounds and to show the tracks of the wounds. We conclude that the photographs were relevant and had substantial probative value.

Concluding that the photographs were relevant and probative, we turn to defendant's second argument, that the prejudicial effect of the photographs outweighed the probative value.

Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in the light of the illustrative value of each . . . lies within the discretion of the trial court. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.

State v. Hennis, 323 N.C. at 285, 372 S.E.2d at 527 (citation omitted).

We have reviewed the photographs and conclude that they were relevant, probative, and not excessive, that they helped to illustrate the pathologist's testimony, and that they could contribute evidence for finding premeditation and deliberation. We conclude that there was no abuse of discretion in the trial court's admitting these photographs. This assignment of error is without merit.

Defendant next argues that the trial court should have instructed the jury regarding voluntary intoxication. Defendant argues that this instruction should be given because there was evidence that defendant had consumed alcohol on the day of the murders.

It is "well established that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he killed a person after consuming intoxicating beverages or controlled substances." State v. Baldwin, 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992). This Court has repeatedly held that in order to be entitled to an instruction on voluntary intoxication, the defendant must produce evidence that would support a conclusion by a judge that defendant was so intoxicated that he could not form a deliberated and premeditated intent to kill. State v. Mash, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988); see also State v. Shoemaker, 334 N.C. 252, 272, 432 S.E.2d 314, 324 (1993); State v. Vaughn, 324 N.C. 301, 308, 377 S.E.2d 738, 741 (1989). "The evidence must show that at the time of the killing the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate

and premeditated purpose to kill." *State v. Medley*, 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978) (citations omitted); *see also State v. McQueen*, 324 N.C. 118, 141, 377 S.E.2d 38, 51 (1989); *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987). Evidence of mere intoxication is not enough to justify the instruction. *State v. Mash*, 323 N.C. at 346, 372 S.E.2d at 536.

[13] Defendant argues that requiring him to meet this burden violates his due process rights because it keeps the jury from considering some evidence that may affect its determination of defendant's ability to premeditate and deliberate. Defendant's argument is without merit. While defendant must satisfy a high burden in order to be given the benefit of the defense of voluntary intoxication, the jurors are not restricted from considering the evidence of intoxication in determining if the State satisfied them beyond a reasonable doubt as to all elements of first-degree murder, including premeditation and deliberation and intent to kill.

Defendant cites *Martin v. Ohio*, 480 U.S. 228, 94 L. Ed. 2d 267 (1987), to support his argument. However, we conclude that *Martin* actually supports the conclusion that there is no due process violation present here. In *Martin*, the Court considered whether it was error to require a defendant to prove self-defense by a preponderance of the evidence. The Court held that it was not error but noted that

> [i]t would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case, i.e., that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. Such instruction would relieve the State of its burden and plainly run afoul of Winship's mandate.

*Martin v. Ohio*, 480 U.S. at 233-34, 94 L. Ed. 2d at 274 (citing *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375 (1970)).

In the case at hand, the jury was not instructed that evidence of intoxication could not be considered in determining whether there was reasonable doubt about the State's case. The jury was not told that the intoxication evidence must be set aside for all purposes unless the defendant satisfied the burden of production necessary to instruct on voluntary intoxication. We conclude that the State's burden in proving first-degree murder beyond a reasonable doubt is in no way reduced by the burden of production defendant must satisfy in

order to receive a voluntary intoxication instruction. Thus, there is no due process violation.

[14] As an alternative argument, defendant states that the evidence here justified an instruction on voluntary intoxication as the evidence unquestionably showed that defendant's capacity to think and plan was impaired due to voluntary intoxication. In determining if the instruction should have been given, we review the evidence in the light most favorable to defendant. *State v. Vaughn*, 324 N.C. at 309, 377 S.E.2d at 742. The evidence in this case shows that defendant had been drinking for some time during the day of the murder and that he did not want to drive because he had been drinking. That is the extent of the evidence of intoxication presented in the guilt-innocence phase.[2] There was no evidence that defendant looked drunk or that he was having difficulty speaking or walking. *See id.* (evidence that defendant was intoxicated and had trouble walking, but no evidence that he behaved inappropriately or that his statements were irrational or incoherent or that he was unaware of what was going on around him; evidence insufficient to require instruction on voluntary intoxication). There was also no evidence in this case as to how much defendant had actually drunk.

We conclude that the evidence in this case was not sufficient to require an instruction on voluntary intoxication. *See State v. Baldwin*, 330 N.C. 446, 463, 412 S.E.2d 31, 41 (1992) (evidence that defendant drank five or six beers and consumed marijuana not sufficient to require instruction).

Determining that the standard of production required of defendant before allowing an instruction on voluntary intoxication does not violate due process and determining that the facts of this case did not require an instruction on voluntary intoxication, we conclude that defendant's assignment of error is without merit.

SENTENCING PHASE ISSUES

Defendant argues that the trial court erred when it sustained the prosecutor's objection to two of defendant's questions during the redirect examination of defendant's brother, Kenneth Skipper.

2. In his argument to the Court, defendant states that evidence of defendant's long history of alcohol abuse and his unsuccessful institutionalized treatment for addiction support an instruction on voluntary intoxication. However, a close review of the transcript shows that this evidence was not presented to the jury until the sentencing phase, so it cannot be considered here.

Kenneth Skipper had been shot in the back by the defendant at an earlier date. Evidence of this assault had been introduced by the State earlier in the sentencing proceeding. Kenneth Skipper testified for defendant that he felt at fault for the shooting because he had attacked his brother and that he had forgiven defendant for shooting him. On cross-examination, the prosecutor asked Kenneth Skipper if he had contacted another witness, defendant's ex-wife (who had also been attacked by defendant) and told her to testify that it was her fault that defendant attacked her. Kenneth Skipper denied making this statement to defendant's ex-wife, and no evidence was ever presented that such a statement was in fact made. On redirect examination, defendant attempted to ask the witness (1) if he was telling the truth, and (2) for what church he was a minister.

[15] Defendant argues that he should have been allowed to ask these questions to bolster the witness' credibility, which had been undermined by the State's questions. Defendant argues that by precluding him from asking these questions, the trial court prevented him from offering competent evidence that would have bolstered the mitigating effect of the witness' other testimony. We conclude that defendant's argument is without merit.

The trial correctly sustained the prosecutor's objection to the question, "Are you telling this jury the truth?" because the credibility of a witness is for a jury to decide, *State v. Ford*, 323 N.C. 466, 469, 373 S.E.2d 420, 421 (1988). Thus, whether this witness, who was affirmed to tell the truth, was actually telling the truth was something the jury was to decide, not the witness.

[16] In regard to the second question concerning the witness being a minister to a particular church, we note that redirect examination is limited to information elicited in cross-examination. Questions asked on redirect should not go beyond matters discussed during cross-examination. *See State v. Felton*, 330 N.C. 619, 633, 412 S.E.2d 344, 353 (1992); *State v. Jolly*, 332 N.C. 351, 366, 420 S.E.2d 661, 670 (1992). In this case, the second question at issue went far beyond the scope of cross-examination, which made no mention whatsoever of the witness' profession. Thus, the trial court correctly sustained the prosecutor's objection.

In any case, there was no error with regard to the second question because the witness actually answered the defendant's question despite the prosecutor's objection and the trial court's sustaining of the objection. The prosecutor did not move to strike the answer, and

the trial court did not admonish the jury to disregard the answer. "Thus, defendant effectively received the benefit of the evidence sought . . . , and he has no . . . cause for complaint on appeal." *State v. Pinch*, 306 N.C. 1, 14, 292 S.E.2d 203, 216, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983), *overruled on other grounds by State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988), *and by State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994).

[17] Defendant also argues that even if these questions were impermissible under traditional evidentiary standards, they should have been permitted under the relaxed evidentiary standard of the penalty phase of a capital proceeding in order to avoid any violation of defendant's due process rights. We conclude that there is no due process concern here as there was in *State v. Barts*, 321 N.C. 170, 362 S.E.2d 235 (1987), *Green v. Georgia*, 442 U.S. 95, 60 L. Ed. 2d 738 (1979), and *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297 (1973). In those cases, the evidence at issue was written and oral hearsay statements that did not fit under traditional hearsay exceptions but which contained some evidence indicating they were credible statements. More importantly for due process consideration, the evidence at issue in these cases all directly reflected on defendant's guilt or involvement in the crime for which he had been convicted. *See Barts*, 321 N.C. at 179, 362 S.E.2d at 240 (confession of other person that he actually killed the person defendant was convicted of killing was at issue); *Green*, 442 U.S. at 96, 60 L. Ed. 2d at 740 (statement of witness that he was told that another person shot and killed the victim after telling defendant to run an errand was at issue); *Chambers*, 410 U.S. at 289, 35 L. Ed. 2d at 305 (evidence at issue was that someone else had made a sworn written confession to crime and told three people he had committed crime for which defendant was convicted). The evidence that defendant addresses in this assignment of error is not of the same degree of importance as the evidence the defendants attempted to present in *Barts*, *Green*, and *Chambers*. We conclude that defendant's due process rights were not violated when the trial court sustained the prosecutor's objections to the particular questions at issue.

Finally, even if the trial court erred by sustaining the objection to these two questions, the error was harmless beyond a reasonable doubt. On redirect, defendant was allowed to elicit the fact that the witness was a minister. The witness had already affirmed that he would tell the truth; thus, the question, "Are you telling this jury the

truth?" was redundant. We also conclude that determining the name of the church that the witness worked for does not bolster the witness' credibility. Thus, any error made by the trial court was harmless beyond a reasonable doubt.

[18] Defendant next argues that the trial court erred when it did not give peremptory instructions on all the mitigating circumstances for which the factual predicate was uncontradicted. Defendant notes that he made a written request that peremptory jury instructions be given as to each mitigating circumstance he submitted to the court. Defendant argues that he should have received peremptory instructions as to all uncontroverted mitigating circumstances, both statutory and nonstatutory.

While we agree that a defendant is entitled to peremptory instructions for uncontradicted mitigating circumstances, whether statutory or nonstatutory, we conclude that defendant requested that peremptory instructions be given only for the mitigating circumstances dealing with mental and emotional impairment and defendant's capacity to appreciate the criminality of his conduct and to conform his conduct to the law. As defendant did not request that peremptory instructions be given for any other circumstances, the trial court did not err in not giving such instructions. *See State v. Green*, 336 N.C. 142, 174, 443 S.E.2d 14, 33; *State v. Gay*, 334 N.C. 467, 493, 434 S.E.2d 840, 854 (1993). The trial judge should not "be required to determine on his own which mitigating circumstance is deserving of a peremptory instruction in defendant's favor. In order to be entitled to such an instruction defendant must timely request it." *State v. Johnson*, 298 N.C. 47, 77, 257 S.E.2d 597, 618-19 (1979).

As noted above, defendant made a general request that peremptory instructions be given as to each mitigating circumstance. However, when the trial court questioned him as to the meaning of this request, defendant responded:

We are requesting peremptory instructions, especially as to those mitigating factors, the two statutory . . . mitigating factors dealing with mental and emotional impairment and also dealing with the defendant's capacity to appreciate the criminality of his conduct and to conform his conduct to law.

There was then a discussion about the evidence for and against these particular circumstances. At the conclusion of this discussion, the

following colloquy occurred between defense counsel and the trial court:

> COURT: Let me ask you this. Do I understand you correctly that you're asking for a peremptory instruction on the first two mitigating circumstances?
>
> [DEFENSE COUNSEL]: Yes, sir.
>
> COURT: You are not asking for a peremptory instruction on the remainder?
>
> [DEFENSE COUNSEL]: No, sir. We recognize we're probably not entitled to it on the other.
>
> COURT: All right. So you're only asking for peremptory instructions on the first two?
>
> [DEFENSE COUNSEL]: Yes, sir.

Defendant did not ask that peremptory instructions be given as to the last statutory mitigating circumstance, regarding defendant's age, nor did he ask that peremptory instructions be given for any of the nonstatutory circumstances. Now, however, defendant argues that peremptory instructions should have been given as to the third statutory mitigating circumstance and for at least eight of the thirteen nonstatutory mitigating circumstances.

We conclude that defendant did not request that peremptory instructions be given for any circumstances except the circumstances that defendant was under the influence of a mental or emotional impairment when he committed the murder and that defendant was unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. We will not require the trial judge "to determine on his own which mitigating circumstance is deserving of a peremptory instruction in defendant's favor." *Johnson*, 298 N.C. at 77, 257 S.E.2d at 618-19. Therefore, we hold that the trial judge did not err when he gave peremptory instructions pursuant only to defendant's specific request.

[19] Defendant next argues that the trial court erred by not instructing the jury that defendant would not be eligible for parole for twenty years if given a life sentence and that defendant could serve two life sentences consecutively, and thus not be eligible for parole for forty years. Defendant notes that he made a written request during the charge conference that such an instruction be given during the

jury instructions. Defendant also argues that such an instruction definitely should have been given when the jury sent a note to the judge asking how long defendant would serve before he would be eligible for parole if given life and whether he would serve two life sentences concurrently.

To begin, the trial court correctly denied defendant's request to include in the jury charge the instruction that life means that defendant may be eligible for parole in twenty years and that the court has the discretion to determine that defendant's sentences be served consecutively. This Court has held that a jury may be instructed about the question of parole and meaning of life imprisonment, if such question arises during jury deliberation. *State v. Robinson*, 336 N.C. 78, 123, 443 S.E.2d 306, 329 (1994). However, we have not held that a jury should be instructed upon these issues absent such an inquiry. Such an instruction to the jury "would unnecessarily present the issue of parole to the jury, absent any indication that the jury was considering that possibility." *Id.* at 124, 443 S.E.2d at 329.

In this case, the jury sent out a question asking about parole eligibility and concurrent sentences. The trial court specifically instructed the jury pursuant to *State v. Conner*, 241 N.C. 468, 85 S.E.2d 584 (1955), and *State v. Robbins*, 319 N.C. 465, 518, 356 S.E.2d 279, 310, telling the jury that eligibility for parole is not a proper matter for the jury and that in considering life imprisonment, "you should determine the question as though life imprisonment means exactly what the statute says: imprisonment for life in the state's prison." The trial court also correctly instructed that concurrence of sentences is not a proper matter for the jury to consider.

We conclude that defendant has failed to assert a convincing basis for this Court to abandon its prior decisions stating that instructions about parole eligibility should not be given. *See State v. Green*, 336 N.C. at 157, 443 S.E.2d at 23. It is true that the General Assembly has recently amended N.C.G.S. § 15A-2002 to require the trial court to instruct the jury during a capital sentencing proceeding concerning the parole eligibility of a defendant sentenced to life. N.C.G.S. § 15A-2002 (Act of 23 March 1994, ch. 21, sec. 5, 1994 N.C. Extra Sess. Serv. 71). This statute is to become effective 1 October 1994. Act of 26 March 1994, ch. 24, sec. 14(b), 1994 N.C. Extra Sess. Serv. 106. However, the General Assembly has decided that the legislation is to be applied prospectively; thus, it does not apply in this case. *See* N.C.G.S. § 15A-2002 official commentary.

We are aware of the recent United States Supreme Court decision in *Simmons v. South Carolina,* —— U.S. ——, 129 L. Ed. 2d 133, (1994), which held that it was error to refuse to give a proposed jury instruction that under state law, defendant was ineligible for parole. We do not consider that case apposite because defendant in this case, if given a life sentence, would eventually have been eligible for parole under North Carolina law. *See* N.C.G.S. § 15A-1371(a1) (1988).

[20] Defendant also argues that in light of the prosecutor's argument stressing defendant's potential for future dangerousness, the instruction on parole eligibility was especially necessary as mitigating evidence. We note that "parole eligibility is not mitigating since it does not reflect on 'any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' " *State v. Green,* 336 N.C. at 158, 443 S.E.2d at 23 (quoting *Skipper v. South Carolina,* 476 U.S. 1, 4, 90 L. Ed. 2d 1, 6 (1986)).

We conclude that defendant's assignment of error is without merit.

[21] Defendant next argues that the trial court erred in not submitting the mitigating circumstance that defendant had no significant history of prior criminal activity. Defendant requested on three occasions that the instruction not be given. The State presented evidence that defendant had been convicted of assault with a deadly weapon inflicting serious bodily injury in 1978, 1982, and 1984.

A "trial court is required to determine whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity." *State v. Wilson,* 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988). The trial court has no discretion as to whether to submit statutory mitigating circumstances when evidence is presented in a capital case which may support a statutory circumstance. *State v. Lloyd,* 321 N.C. 301, 311, 364 S.E.2d 316, 323, *sentence vacated on other grounds,* 488 U.S. 807, 102 L. Ed. 2d 18, *on remand,* 323 N.C. 622, 374 S.E.2d 277 (1988), *sentence vacated on other grounds,* 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand,* 329 N.C. 662, 407 S.E.2d 218 (1991). However, the trial court is not required to instruct on a mitigating circumstance unless substantial evidence supports the circumstance. *State v. Laws,* 325 N.C. 81, 110, 381 S.E.2d 609, 626 (1989), *sentence vacated on other grounds,* 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand,* 328 N.C. 550, 402 S.E.2d 573, *cert.*

*denied,* 502 U.S. 876, 116 L. Ed. 2d 174, *reh'g denied,* 502 U.S. 1001, 116 L. Ed. 2d 648 (1991).

We conclude that defendant's record of three violent felonies, similar in nature to the crime for which he was being sentenced, in the twelve years preceding this particular crime illustrated that defendant did have a significant record. We note that "it is not merely the number of prior criminal activities, but the nature and age of such acts that the trial court considers in determining whether by such evidence a rational juror could conclude that this mitigating circumstance exists." *State v. Artis,* 325 N.C. 278, 314, 384 S.E.2d 490, 470.

In many cases, we have held that the trial court did not err in failing to submit this circumstance *ex mero motu. See State v. Jones,* 336 N.C. 229, 247, 443 S.E.2d 48, 56-57 (1994) (defendant used illegal drugs, broke into a convenience store six or seven times, and broke into a pawn shop and stole guns); *State v. Robinson,* 336 N.C. 78, 119, 443 S.E.2d 306, 326 (defendant used and dealt drugs, had pled guilty to a robbery, carried a pistol, and used another man's driver's license as identification); *State v. Stokes,* 308 N.C. 634, 653-54, 304 S.E.2d 184, 196 (1983) (defendant engaged in five incidents of theft and possessed, used, and sold marijuana).

"We do not find it necessary to engage in any further comparison between this case and those cases in which we have determined the propriety of the submission or refusal to submit the circumstance at issue." *State v. Robinson,* 336 N.C. at 119, 443 S.E.2d at 326. We hold that based on the evidence of defendant's continuous involvement in violent criminal activities, similar to that for which he was sentenced in this case, no rational juror could have found that defendant had "no significant history of prior criminal activity." The jury in fact specifically found, as an *aggravating* circumstance, that defendant had been previously convicted of a felony involving the use or threat of violence to a person. We fail to see how a rational juror could have then found that this criminal history was also a mitigating circumstance. The trial court did not err in failing to submit this circumstance for the jury's consideration.

[22] Next, defendant argues that the trial court erred when giving its instructions regarding the statutory mitigating circumstance of age. The trial court instructed the jury:

(3) Consider whether the age of the defendant at the time of this murder is a mitigating factor.

STATE v. SKIPPER

[337 N.C. 1 (1994)]

The mitigating effect of the age of the defendant is for you to determine from all the evidence and circumstances which you find from the evidence.

If one or more of you finds by a preponderance of the evidence that the circumstance exists, you would so indicate by having your foreman write, "Yes," in the space provided after this mitigating circumstance on the issues and recommendation form.

If none of you finds this circumstance to exist, you would so indicate by having your foreman write, "No," in that space.

These instructions are pursuant to the North Carolina Pattern Jury Instructions. N.C.P.I.—Crim. 150.10 (1993). Defendant, however, argues that these instructions allowed the jury to give the statutory mitigating circumstance no weight in violation of *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1 (1982). Defendant bases his argument on the language that "the mitigating effect of the age of the defendant is for you to determine." We conclude that defendant's argument is without merit.

We begin by noting that in regard to statutory mitigating circumstances, jurors are instructed that if they find a statutory mitigating circumstance to exist, then they must consider the circumstance in their balancing of aggravators and mitigators. However, jurors are instructed to indicate a finding of a particular circumstance only if the preponderance of the evidence persuades a juror that the circumstance exists. *See State v. Kirkley*, 308 N.C. 196, 224, 302 S.E.2d 144, 160 (1983), *overruled on other grounds by State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988); N.C.P.I.—Crim. 150.10. Additionally, the actual weight that a juror chooses to give to such a circumstance is up to the particular juror. *State v. Craig*, 308 N.C. 446, 460, 302 S.E.2d 740, 749, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983). The only requirement is that the jury may not "refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Eddings v. Oklahoma*, 455 U.S. at 114, 71 L. Ed. 2d at 11. The jurors "may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration." *Id.* at 114-15, 71 L. Ed. 2d at 11.

We conclude that, in this case, the language "mitigating effect" did not allow the jury to "refuse to consider, *as a matter of law*," the evidence about age as a mitigating circumstance. The instruction clearly states that age should be considered. However, the weight to

be given such circumstance is for the jury to decide based on its consideration of all the facts and circumstances found from the evidence.

Defendant argues that it is clear that the jury interpreted this instruction to mean that it could have "refuse[d] to consider" this circumstance because the evidence in support of the circumstance was so strong, yet the jury did not find that the circumstance existed. We conclude that this analysis is erroneous.

Defendant's chronological age was forty-eight. Chronological age standing alone is usually not determinative of the existence of this circumstance. *State v. Hill*, 331 N.C. 387, 414, 417 S.E.2d 765, 778 (chronological age of fifty-four standing alone does not entitle defendant to have this (age) mitigating circumstance submitted). In this case, evidence was presented that defendant had a mental age of a six-year-old. However, there was also evidence that defendant had been married, ran his own business, and supported himself and his children. We conclude that based on these facts, the jury was not required to find that this circumstance existed. *See State v. Turner*, 330 N.C. 249, 268, 410 S.E.2d 847, 858 (1991) (jury not required to accept circumstance where defendant was twenty-two years old; evidence of very bad childhood affecting his development; and evidence that defendant married, maintained employment, and had a prior criminal history indicating maturity). We also note that defendant acknowledged that the evidence as to this circumstance was controverted. Defendant's counsel told the trial court that he did not believe a peremptory instruction would be appropriate for this circumstance.

Holding that the instruction given to the jury was correct and that the evidence was contradictory as to this mitigating circumstance, we conclude that defendant's assignment of error is without merit.

[23] Next, defendant argues that the trial court erred when instructing as to nonstatutory mitigating circumstances because its instructions let the jury decide if the nonstatutory circumstance had mitigating value. Defendant argues that the nonstatutory mitigating circumstances that he presented to the jury had inherent mitigating value, as evidenced by the fact that the trial court decided to submit them in the first place. Thus, defendant argues that the jury has to consider the circumstances under *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, and *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978).

The trial court instructed the jury that

[i]f one or more of you finds by a preponderance of the evidence that this [nonstatutory] circumstance exists and also is deemed mitigating, you would so indicate by having your foreman write, "Yes," in the space provided.

This Court has repeatedly determined that nonstatutory mitigating circumstances do not necessarily have mitigating value. *See State v. Green,* 336 N.C. 142, 173, 443 S.E.2d 14, 32; *State v. Robinson,* 336 N.C. 78, 117, 443 S.E.2d 306, 325; *State v. Gay,* 334 N.C. 467, 492, 434 S.E.2d 840, 854; *State v. Fullwood,* 323 N.C. 371, 397, 373 S.E.2d 518, 533 (1988), *sentence vacated on other grounds,* 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *on remand,* 329 N.C. 233, 404 S.E.2d 842 (1991). In *State v. Fullwood,* the Court held that it is "for the jury to determine whether submitted nonstatutory mitigating circumstances have mitigating value." 323 N.C. at 396, 373 S.E.2d at 533. "[B]efore the jury 'finds' a nonstatutory mitigating circumstance, it must make two preliminary determinations: (1) that the evidence supports the existence of the circumstance *and* (2) that the circumstance has mitigating value." *State v. Huff,* 325 N.C. 1, 59, 381 S.E.2d 635, 669 (1989), *sentence vacated on other grounds,* 497 U.S. 1021, 111 L. Ed. 2d 777 (1990), *on remand,* 328 N.C. 532, 402 S.E.2d 577 (1991). This proposition has recently been reiterated in *State v. Green,* 336 N.C. at 173, 443 S.E.2d at 32 (jurors may reject nonstatutory mitigating circumstances if they do not deem them to have mitigating value).

In addition:

The language of the instructions clearly permits and instructs the jury to consider any evidence of the nonstatutory mitigating circumstances, as required by *Lockett v. Ohio,* 438 U.S. 586, 57 L. Ed. 2d 973, and *Eddings v. Oklahoma,* 455 U.S. 104, 71 L. Ed. 2d 1 (1982). As this Court noted in *State v. Fullwood,* however, "neither *Lockett* nor *Eddings* requires that the sentencer must determine that the submitted mitigating circumstance has mitigating value." *Fullwood,* 323 N.C. at 396, 373 S.E.2d at 533.

*State v. Robinson,* 336 N.C. at 117, 443 S.E.2d at 325. As recently noted by the United States Supreme Court,

"*Lockett* and its progeny stand only for the proposition that a State may not cut off in an absolute manner the presentation of mitigating evidence, either by statute or judicial instruction, or by limiting the inquiries to which it is relevant so severely that the evidence could never be part of the sentencing decision at all."

*Johnson v. Texas,* —— U.S.——, ——, 125 L. Ed. 2d 290, 302 (1993) (quoting *McKoy v. North Carolina,* 494 U.S. 433, 456, 108 L. Ed. 2d 369, 389 (1990) (Kennedy, J., concurring in judgment)). The instruction at issue here allows the jury to consider all the evidence in mitigation, and it allows the jury to consider whether nonstatutory mitigating circumstances in fact have mitigating value. The instruction does not allow the jury to ignore the evidence.

We find no reason to alter our previous decisions and conclude that the trial court did not err in its instructions on nonstatutory mitigating circumstances in this case.

[24] Next, defendant argues that the trial court's instructions to the jury were erroneous because they did not allow all the jurors to consider any issue of mitigation when weighing the aggravators and mitigators in determining the death sentence. Defendant argues that such instructions violate *McKoy v. North Carolina,* 494 U.S. 433, 108 L. Ed. 2d 369.

The trial court instructed the jury:

If you find from the evidence one or more mitigating circumstances, you must weigh the aggravating circumstances against the mitigating circumstances.

When deciding this issue, each juror may consider any mitigating circumstance or circumstances that the juror determined to exist by a preponderance of the evidence in Issue Two.

. . . .

Issue Four is, Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances you found is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by one or more of you?

In deciding this issue, you are not to consider the aggravating circumstances standing alone. You must consider them in connection with any mitigating circumstances found by one or more of you. When making this comparison, each juror may consider any mitigating circumstance or circumstances that the juror determined to exist by a preponderance of the evidence.

Defendant argues that these instructions were erroneous because they precluded those jurors who had not earlier found a mitigating

circumstance to exist from considering that mitigating circumstance, even if it was found by another juror, when determining defendant's sentence. Defendant seems to believe that the jury should be instructed that once one juror finds a mitigating circumstance to exist and have value, *all* twelve jurors must consider that circumstance when reaching their decision, even if a juror did not believe that the mitigating circumstance existed.

We conclude that defendant's desired instruction is inconsistent with the procedure dictated by the North Carolina capital sentencing scheme and is not what was required or contemplated by the United States Supreme Court in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, or *Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384 (1988), upon which *McKoy* relied. "Were we to adopt this reading of *McKoy* and its progenitors, we would create an anomalous situation where jurors are required to consider mitigating circumstances which are only found to exist by a single holdout juror." *State v. Lee*, 335 N.C. 244, 287, 439 S.E.2d 547, 570.

The purpose of *Mills* and *McKoy* was to allow individualized determination of mitigating circumstances.

> *Mills* requires that each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death. This requirement means that, in North Carolina's system, each juror must be allowed to consider all mitigating evidence . . . .

*McKoy v. North Carolina*, 494 U.S. at 442-43, 108 L. Ed. 2d at 381. Justice Blackmun noted in *McKoy* that

> it is understood that different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie their verdict.

*Id.* at 449, 108 L. Ed. 2d at 384-85 (Blackmun, J., concurring) (footnotes omitted). *McKoy* does not invalidate "a jury instruction that does not require unanimity with respect to mitigating circumstances but requires a juror to consider a mitigating circumstance only if he or she is convinced of its existence by a preponderance of the evidence." *Id.* at 444, 108 L. Ed. 2d at 382 (White, J., concurring).

We conclude that there is no constitutional requirement that a juror must consider a mitigating circumstance found by another juror

to exist. What is constitutionally required is that jurors be individually given the opportunity to consider and give weight to whatever mitigating evidence they deem to be valid. The instructions given by the trial court in this case gave each juror this individualized opportunity. Thus, the instructions of the trial court are valid. Defendant's assignment of error is without merit.

[25] In a related issue, defendant argues that the trial court erred by instructing the jury that each juror "may" consider mitigating circumstances that juror found to exist when weighing the aggravating and mitigating circumstances. Specifically, the trial judge instructed the jury:

> If you find from the evidence one or more mitigating circumstances, you must weigh the aggravating circumstances against the mitigating circumstances.
>
> When deciding this issue, each juror *may* consider any mitigating circumstance or circumstances that the juror determined to exist by a preponderance of the evidence in Issue Two.
>
> . . . .
>
> In deciding this issue, you are not to consider the aggravating circumstances standing alone. You must consider them in connection with any mitigating circumstances found by one or more of you. When making this comparison, each juror *may* consider any mitigating circumstance or circumstances that the juror determined to exist by a preponderance of the evidence.

(Emphasis added); *see* N.C.P.I.—Crim. 150.10.

Defendant contends that this instruction violated the Eighth and Fourteenth Amendments to the United States Constitution and principles set forth in *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 11. Defendant argues that the use of the word "may" allowed some jurors to disregard relevant mitigating evidence they had earlier found to exist.

We have recently addressed this issue, reviewing the exact instruction challenged here and finding it to be without error. *State v. Lee*, 335 N.C. at 286-87, 439 S.E.2d at 569. Specifically, we held in *Lee* that "[f]ar from precluding a juror's consideration of mitigating circumstances he or she may have found, the instant instruction expressly instructs that the evidence in mitigation *must* be weighed against the evidence in aggravation." *Id.* at 287, 439 S.E.2d at 570. We

continue to believe that the Pattern Jury Instructions as given here are correct. *See State v. Green*, 336 N.C. at 175, 443 S.E.2d at 33-34; *State v. Robinson*, 336 N.C. at 121, 443 S.E.2d at 327. Thus, this assignment of error is without merit and is overruled.

**[26]** Next, defendant argues that the trial court erred in its instruction on mitigating circumstances because the instruction was too narrow and created an unacceptable risk that the jury failed to consider relevant mitigating information.

The trial court instructed the jury:

Members of the jury, a mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first-degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first-degree murders.

This Court has approved this definition in numerous cases. *See State v. Hill*, 331 N.C. 387, 420, 417 S.E.2d 765, 782; *State v. Boyd*, 311 N.C. 408, 421, 319 S.E.2d 189, 198 (1984), *cert. denied*, 471 U.S. 1030, 85 L. Ed. 2d 324 (1985); *State v. Moose*, 310 N.C. 482, 499, 313 S.E.2d 507, 518 (1984); *State v. Irwin*, 304 N.C. 93, 104, 282 S.E.2d 439, 446-47 (1981); *see also* N.C.P.I.—Crim. 150.10.

In addition, the trial court instructed the jury that

in considering Issue Two it would be your duty to consider as a mitigating circumstance any aspect of the defendant's character and any of the circumstances of this murder that the defendant contends is a basis for a sentence less than death and any other circumstances arising from the evidence which you deem to have mitigating value.

This instruction is consistent with language from *Eddings v. Oklahoma*, 455 U.S. 104, 110, 71 L. Ed. 2d 1, 8, and *Lockett v. Ohio*, 438 U.S. 586, 605, 57 L. Ed. 2d 973, 990, discussing what evidence a sentencer must be able to consider when determining a sentence of life versus death. *See State v. Irwin*, 304 N.C. at 104, 282 S.E.2d at 447; *see also* N.C.P.I.—Crim. 150.10.

Reviewing the instructions given to the jury in their entirety, we conclude that the jury was not restricted from considering any evidence that may have lessened defendant's sentence, whether it be evi-

dence that was directly based on defendant's character or evidence that related to the actual murders. The trial court gave a valid instruction consistent with our case law, the North Carolina Pattern Jury Instructions, and United States Supreme Court case law. We conclude that defendant's assignment of error is without merit.

[27] Next, defendant argues that the trial court erred in submitting the aggravating circumstance that the murders were part of a course of conduct in which defendant engaged and which course of conduct included the commission by the defendant of crimes of violence against another person or persons. N.C.G.S. § 15A-2000(e)(11) (1988).

Defendant acknowledges that the trial court instructed the jurors consistent with the Pattern Jury Instructions:

A murder is part of such a course of conduct if it and the other crimes of violence are part of a pattern of the same or similar acts which establish that there existed in the mind of the defendant a plan, scheme, system, or design involving both the murder and those other crimes of violence.

Defendant argues that this circumstance should not have been submitted because it was not supported beyond a reasonable doubt by the evidence. We note:

In determining the sufficiency of the evidence to *submit* an aggravating circumstance to the jury, the trial court must consider the evidence in the light most favorable to the State, with the State entitled to every reasonable inference to be drawn therefrom, and discrepancies and contradictions resolved in favor of the State.

*State v. Syriani*, 333 N.C. 350, 392, 428 S.E.2d 118, 140 (emphasis added). " 'If there is substantial evidence of each element of the [aggravating] issue under consideration, the issue must be submitted to the jury for its determination.' " *State v. Moose*, 310 N.C. at 494, 313 S.E.2d at 516 (quoting *State v. Stanley*, 310 N.C. 332, 347, 312 S.E.2d 393, 401 (1984) (Martin, J., dissenting)).

When determining if there is evidence to prove the existence of the course of conduct circumstance, the sufficiency of the evidence "depends upon a number of factors, among them the temporal proximity of the events to one another, a recurrent *modus operandi*, and motivation by the same reasons." *State v. Price*, 326 N.C. 56, 81, 388 S.E.2d 84, 98, *sentence vacated on other grounds*, 498 U.S. 802, 112

L. Ed. 2d 7 (1990), *on remand*, 331 N.C. 620, 418 S.E.2d 169 (1992), *sentence vacated on other grounds*, —U.S. —, 122 L. Ed. 2d 113, *on remand*, 334 N.C. 615, 433 S.E.2d 746 (1993), *sentence vacated on other grounds*, — U.S.—, 129 L. Ed. 2d 888, *on remand*, 337 N.C. 756, 448 S.E.2d 827 (1994), *pet. for cert. filed* (U.S. 17 Jan. 1995) (No. 94-7672). "[T]he closer the incidents of violence are connected in time, the more likely that the acts are part of a plan, scheme, system, design or course of action." *State v. Cummings*, 332 N.C. 487, 510, 422 S.E.2d 692, 705 (1992). "[I]n order to find course of conduct, a court must consider the circumstances surrounding the acts of violence and discern some connection, common scheme, or some pattern or psychological thread that ties them together." *Id.*

In this case, there was substantial evidence to support the submission of this circumstance. As noted previously, the evidence established that defendant pulled a semiautomatic rifle from under the seat of his truck and fired multiple shots at Ailene Pittman, inflicting thirty-four wounds. He then said "you too" and shot Nelson Fipps. As the truck pulled away from the scene of the crime, defendant asked the driver, "did I get them" both. There was no evidence that the victims had provoked defendant.

Determining that the crimes occurred within moments of each other at the same location and that the same *modus operandi* was used in each killing, we hold that the facts clearly establish that the two crimes were committed as a part of a course of conduct in which defendant engaged and which included the commission by defendant of a crime of violence against another person. We conclude that the trial court did not err when it submitted this circumstance to the jury. Defendant's assignment of error is without merit.

[28] Next, defendant argues that the trial court erred when it refused to independently submit specific nonstatutory mitigating circumstances requested by defendant in writing. Defendant argues that the instructions given by the trial court kept the jury from considering relevant mitigating evidence and diluted and diminished the written instructions that were given in place of the requested instructions.

All the circumstances requested by defendant were put on the written recommendation form; however, some of the written instructions were combined. The instruction that defendant cannot read and the instruction that defendant cannot write were combined to read that defendant was functionally illiterate and cannot read or write. The instruction that defendant pled guilty to criminal charges in 1984, the instruction that defendant pled guilty to criminal charges in 1981,

and the instruction that defendant pled guilty to criminal charges in 1977 were combined to read that the defendant pled guilty to criminal charges in 1984, 1981, and 1977. The instruction that defendant was under the influence of alcohol at the time of the offense was changed to read that defendant had consumed alcohol at the time of the offense. Finally, the instruction that defendant loves and respects his mother and the instruction that defendant loves and respects his father were combined to read that defendant loves and respects his parents.

In *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990), this Court held that

> where a defendant makes a timely *written* request for a listing *in writing* on the form of possible nonstatutory mitigating circumstances that are supported by the evidence and which the jury could reasonably deem to have mitigating value, the trial court must put such circumstances in writing on the form.

*Id.* at 324, 389 S.E.2d at 80. We concluded that such a practice was necessary because "common sense teaches us that jurors, as well as all people, are apt to treat written documents more seriously than items verbally related to them. [If] . . . the circumstances [were] written on the form, the trial judge and the jury would . . . [be] required to directly address each of them." *Id.* at 325, 389 S.E.2d at 81.

We conclude that in this case the instructions requested by defendant were given to the jury in written form. While the language was not exactly that requested by defendant, the jury was required to directly address every point brought forward by defendant in his written request. For example, the jury was instructed to consider whether defendant loves and respects his parents. In addressing this issue, the jury must consider both whether defendant loves and respects his mother and whether defendant loves and respects his father. In essence, the requested instructions were subsumed into the given instruction. *See State v. Benson*, 323 N.C. 318, 327, 372 S.E.2d 517, 522 (1988) (no error when trial court fails to submit a mitigating circumstance that was subsumed into another mitigating circumstance).

The refusal of a trial judge to submit proposed circumstances separately and independently is not error. *State v. Greene*, 324 N.C. 1, 21, 376 S.E.2d 430, 443 (1989) (court may incorporate requested circumstances within given instructions and the catchall circumstance), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603

(1990), *on remand,* 329 N.C. 771, 408 S.E.2d 185 (1991); *State v. Fullwood,* 323 N.C. 371, 393, 373 S.E.2d 518, 531 (court did not err in refusing to submit nonstatutory mitigating circumstance that had been incorporated into statutory mitigating circumstance that was submitted to jury); *State v. Lloyd,* 321 N.C. 301, 313-14, 364 S.E.2d 316, 324-25 (court did not err in refusing to submit two nonstatutory mitigating circumstances regarding defendant's criminal record where a submitted statutory mitigating circumstance allowed jury to consider defendant's criminal record as a whole).

Assuming *arguendo* that the trial court erred by not giving the exact instructions requested by defendant, we conclude that such error was harmless beyond a reasonable doubt. A trial court's error in failing to submit a nonstatutory mitigating circumstance is harmless "where it is clear that the jury was not prevented from considering any potential mitigating evidence." *State v. Green,* 336 N.C. 142, 183, 443 S.E.2d 14, 38; *see State v. Hill,* 331 N.C. 387, 417, 417 S.E.2d 765, 780.

We conclude that the trial court correctly brought to the jury's attention all of defendant's requested instructions that were supported by the evidence. Assuming *arguendo,* however, that the trial court did err, such error was harmless beyond a reasonable doubt.

[29] Next, defendant argues that imposition of the death penalty here is unconstitutional because defendant has suffered lifelong organic brain damage and is mentally retarded. To begin, we note that defendant did not object to the imposition of the death penalty on these grounds at trial. Nor did defendant make this an assignment of error in the record. Accordingly, the issue is deemed waived by defendant. *State v. Upchurch,* 332 N.C. 439, 456, 421 S.E.2d 577, 587 (1992). Nevertheless, we have considered defendant's argument.

We first note that the United States Supreme Court has held that the Eighth Amendment does not categorically prohibit the infliction of the death penalty on a person who is mentally retarded. *Penry v. Lynaugh,* 492 U.S. 302, 340, 106 L. Ed. 2d 256, 292 (1989). In addition, this Court has affirmed the death penalty in cases where defendants' IQ test scores were similar to or lower than this defendant's IQ test score of 69. *State v. McCollum,* 334 N.C. 208, 248, 433 S.E.2d 144, 166 (1993) (Exum, C.J., concurring in part and dissenting in part) (IQ tests scores of 61 and 69), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 895 (1994); *State v. Artis,* 325 N.C. 278, 311, 384 S.E.2d 470, 489 (IQ test score of 67); *State v. Hunt,* 323 N.C. 407, 435,

**STATE v. SKIPPER**

[337 N.C. 1 (1994)]

373 S.E.2d 400, 418 (1988) (codefendant Barnes' IQ test score of 68), *sentence vacated on other grounds sub nom. Barnes v. North Carolina*, 499 U.S. 1022, 108 L. Ed. 2d 602, *on remand*, 330 N.C. 104, 408 S.E.2d 843 (1991); *State v. Pinch*, 306 N.C. 1, 57, 292 S.E.2d 203, 240 (1982) (Exum, J., dissenting) (IQ test score of 66).

The imposition of the death penalty on this defendant is not unconstitutional, and defendant's assignment of error has no merit.

### PRESERVATION ISSUES

[30] Defendant brings forward six issues for preservation purposes. First, defendant contends that it is unconstitutional to permit the prosecutor to peremptorily challenge jurors who express any reservation about the death penalty. We have previously decided this issue against defendant. *State v. Allen*, 323 N.C. 208, 222, 372 S.E.2d 855, 863 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand*, 331 N.C. 746, 417 S.E.2d 227 (1992), *cert. denied*, —— U.S. ——, 122 L. Ed. 2d 775, *reh'g denied*, —— U.S. ——, 123 L. Ed. 2d 503 (1993).

[31] Second, defendant contends that the Pattern Jury Instruction imposing a duty upon the jury to return death if the mitigating circumstances are insufficient to outweigh the aggravating circumstances is unconstitutional. This Court has previously decided this issue adversely to defendant. *State v. McDougall*, 308 N.C. 1, 26, 301 S.E.2d 308, 324, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983); *State v. Pinch*, 306 N.C. 1, 33-34, 292 S.E.2d 203, 227.

[32] Third, defendant contends that the trial court erred in denying his request for individual *voir dire* and sequestration of prospective jurors. This Court has consistently denied other defendants relief on this basis. *State v. Reese*, 319 N.C. 110, 119, 353 S.E.2d 352, 357 (1987); *State v. Wilson*, 313 N.C. 516, 524, 330 S.E.2d 450, 457 (1985); *State v. Johnson*, 298 N.C. 355, 362, 259 S.E.2d 752, 757 (1979). "The decision whether to grant sequestration and individual *voir dire* of prospective jurors rests in the sound discretion of the trial court and its ruling will not be disturbed absent a showing of abuse of discretion." *State v. Wilson*, 313 N.C. at 524, 330 S.E.2d at 457. A review of the transcript and record shows no such abuse of discretion in this case.

[33] Fourth, defendant contends that the trial court erred by denying defendant's request that the trial court give specific instructions, written by defendant, about the procedures involved in a capital punishment proceeding prior to the beginning of jury selection. The trial

court did give preliminary jury instructions pursuant to the Pattern Jury Instructions. This Court has previously considered such a contention and decided it adversely to defendant. *State v. Artis*, 325 N.C. 278, 294-96, 384 S.E.2d 470, 478-79.

[34] Fifth, defendant argues that the North Carolina death penalty statute is unconstitutional. This Court has repeatedly held that the North Carolina death penalty statute is not unconstitutional. *State v. Roper*, 328 N.C. 337, 370, 402 S.E.2d 600, 619, *cert. denied*, 502 U.S. 902, 116 L. Ed. 2d 232 (1991); *State v. McLaughlin*, 323 N.C. 68, 102, 372 S.E.2d 49, 71 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand*, 330 N.C. 66, 408 S.E.2d 732 (1991); *State v. Barfield*, 298 N.C. 306, 353-54, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137, *reh'g denied*, 448 U.S. 918, 65 L. Ed. 2d 1181 (1980).

[35] Sixth, defendant argues that the trial court erred by instructing the jury that defendant had the burden of proving the mitigating circumstances by a preponderance of the evidence. We have previously considered this contention and have decided it adversely to defendant. *State v. Roper*, 328 N.C. at 368, 402 S.E.2d at 618; *State v. Barfield*, 298 N.C. at 353, 259 S.E.2d at 543; *State v. Johnson*, 298 N.C. 47, 75-76, 257 S.E.2d 597, 617-18.

In summary, all of defendant's contentions as to the preservation issues have been decided contrary to defendant in the past. Upon our review of the issues, we find no reason to alter our previous decisions and determine that all of these assignments of error are without merit.

## PROPORTIONALITY REVIEW

[36] Finding no error in either the guilt-innocence phase or the capital sentencing proceeding, it is now the duty of this Court to review the record and determine (1) whether the record supports the jury's finding of the aggravating circumstances upon which the sentencing court based its sentence of death; (2) whether the sentence was imposed under the influence of passion, prejudice, or any other 'arbitrary factor; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (1988).

The following aggravating circumstances were submitted to the jury:

STATE v. SKIPPER

[337 N.C. 1 (1994)]

(1) Had the defendant been previously convicted of a felony involving the use of violence to the person? [N.C.G.S. § 15A-2000(e)(3) (1988).]

. . . .

(2) Was this murder part of a course of conduct in which the defendant engaged and did that course of conduct include the commission by the defendant of other crimes of violence against other persons? [N.C.G.S. § 15A-2000(e)(11).]

The jury responded "yes" to each of these inquiries, thus finding these aggravating circumstances to exist.

As noted earlier, we have already concluded that the aggravating circumstance that the murder was part of a course of conduct that included other crimes of violence was supported by the evidence. We also conclude that the jury's finding of the other aggravating circumstance was clearly supported by the evidence. During the sentencing phase, the State presented evidence that defendant had pled guilty on three separate occasions to assault with a deadly weapon inflicting serious injury.

After conducting a thorough review of the transcript, record on appeal, and briefs and oral arguments of counsel, we further conclude that the jury did not sentence defendant to death while under the influence of passion, prejudice, or any other arbitrary factor.

Our final duty is to determine whether the punishment of death in this case is excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

As this Court has frequently noted, the purpose of proportionality review is to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review is necessary to serve "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979). In conducting proportionality review, we "determine whether the death sentence in this case is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant." *State v. Brown*, 315 N.C. 40, 70, 337 S.E.2d 808, 829 (1985), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), *over-*

*ruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988).

We begin our analysis by comparing the instant case with those seven cases in which this Court has determined that the sentence of death was disproportionate: *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373; *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983).

In *State v. Benson,* the defendant was convicted of first-degree murder based solely upon the theory of felony murder; the victim died of a cardiac arrest after being robbed and shot in the legs by the defendant. The only aggravating circumstance found by the jury was that the crime was committed for pecuniary gain. This Court determined that the death sentence was disproportionate based in part on the fact that it appeared defendant was simply attempting to rob the victim, 323 N.C. at 329, 372 S.E.2d at 523, and defendant "pleaded guilty during the trial and acknowledged his wrongdoing before the jury." *Id.* at 328, 372 S.E.2d at 523.

In *State v. Stokes,* the defendant was one of four individuals who was involved in the beating death of a robbery victim. Defendant was found guilty of first-degree murder under the theory of felony murder, and only one aggravating circumstance was found, that the crime was especially heinous, atrocious, or cruel. This Court, in finding that the death sentence was disproportionate, noted that none of the defendant's accomplices were sentenced to death, although they "committed the same crime in the same manner." 319 N.C. at 27, 352 S.E.2d at 667.

In *State v. Rogers,* the defendant was convicted of first-degree murder based on a shooting of the victim in a parking lot during an argument. Only one aggravating circumstance was found, that "[t]he murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons." 316 N.C. at 234, 341 S.E.2d at 731.

In *State v. Young,* the defendant stabbed and robbed a man. The Court noted that in armed robbery cases where death is imposed, the jury has found the aggravating circumstance that the defendant was

engaged in a course of conduct that included the commission of violence against another person and/or that the crime was especially heinous, atrocious, or cruel. 312 N.C. at 691, 325 S.E.2d at 194. Neither of these circumstances was found by the jury in *Young*.

In *State v. Hill*, the defendant shot a police officer while engaged in a struggle near defendant's automobile. This Court found the death sentence disproportionate:

> Given the somewhat speculative nature of the evidence surrounding the murder here, the apparent lack of motive, the apparent absence of any simultaneous offenses, and the incredibly short amount of time involved, together with the jury's finding of three mitigating circumstances tending to show defendant's lack of past criminal activity and his being gainfully employed, and the unqualified cooperation of defendant during the investigation . . . .

311 N.C. at 479, 319 S.E.2d at 172.

In *State v. Bondurant*, the defendant shot his victim after defendant had spent the night drinking; there was no motive for the killing, and immediately after the victim was shot, defendant made sure the victim was taken to the hospital. 309 N.C. at 694, 309 S.E.2d at 182-83.

In *State v. Jackson*, the victim had been shot twice in the head. The defendant had earlier flagged down the victim's car, telling his companions that he intended to rob the victim. This Court found the death sentence disproportionate because there was "no evidence of what occurred after defendant left with McAulay [the victim]." 309 N.C. at 46, 305 S.E.2d at 717.

We conclude that this case is not similar to any of the above cases, where death was found to be a disproportionate sentence. Most notably, in all of the cases where the death sentence has been determined to be disproportionate, only one person has been murdered by the defendant. In this case, two people were murdered by defendant, in front of an eyewitness who could relate exactly what happened. Defendant here, without provocation, shot Ailene Pittman and Nelson Fipps numerous times with a semiautomatic rifle containing fragmentation bullets. He left his two victims dying on the front lawn and never attempted to get them any help. Defendant had already been convicted on three other occasions of inflicting serious injury with a deadly weapon, on three different victims.

In reviewing the proportionality of a sentence, it is also appropriate for us to compare the case before us to other cases in the pool used for proportionality review. *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). However, we "will not undertake to discuss or cite all of those cases" we have reviewed. *State v. McCollum*, 334 N.C. 208, 244, 433 S.E.2d 144, 164. In examining the pool, we review cases with similar facts and with similar aggravators and mitigators.

Here, defendant was convicted of two first-degree murders on the theory of premeditation and deliberation. In addition, the jury found the existence of the two aggravating circumstances submitted in this case: defendant had previously been convicted of a felony involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3); and the murders were part of a course of conduct that included crimes of violence to others, N.C.G.S. § 15A-2000(e)(11). The jury also found five of the sixteen submitted mitigating circumstances to exist.[3] The mitigating circumstances found were: the murder was committed while the defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2) (1988); the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, N.C.G.S. § 15A-2000(f)(6) (1988); at the time of the offense defendant had consumed alcohol; defendant was an alcohol abuser; and any other circumstance or circumstances arising from the evidence which one or more of the jurors deems to have mitigating value, N.C.G.S. § 15A-2000(f)(9) (1988). The following circumstances were submitted to the jury but not found: the age of defendant at the time of the murder, N.C.G.S. § 15A-2000(f)(7) (1988); defendant was a hard worker and had a good employment record; defendant's IQ is in the mental retardation range; defendant pled guilty to the earlier criminal charges with which he was charged, occurring on 31 May 1984, 15 December 1981, and 6 December 1977; defendant suffered the death of two children during the last five years within a six-week period of each other; defendant loves and respects his parents; defendant provided love, financial assistance, and care for his children; defendant only completed the eighth grade in school; defendant was cooperative with law enforcement at the time of his arrest; defendant is functionally illiterate and

---

3. Two issues and recommendation sheets were given to the jury, one for Ailene Pittman and one for Nelson Fipps. The sheets contained the same aggravators and mitigators, and the jury found the same aggravators and mitigators to exist in both cases.

cannot read or write; defendant was a kind, friendly, and compassionate person who developed strong emotional ties to his close friends.

Defendant argues that the prime reasons that his sentence is disproportionate are his low IQ and the fact that the jury found him to be mentally or emotionally disturbed when the crime was committed, and that defendant's capacity to appreciate the criminality of his conduct was impaired. This Court has affirmed death sentences even when the jury has found the two noted statutory mitigators. *See State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308; *State v. Rook*, 304 N.C. 201, 283 S.E.2d 732 (1981), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982). As noted earlier in this decision, this Court has also affirmed the death sentences in cases where defendants have made similar scores on IQ tests.

We have reviewed cases involving the two statutory aggravators found in this case and have noted that in many of these cases, the defendant received death. *See State v. Vereen*, 312 N.C. 499, 324 S.E.2d 250, *cert. denied*, 471 U.S. 1094, 85 L. Ed. 2d 526 (1985); *State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308. We have also reviewed cases where there have been other crimes of violence committed during a premeditated and deliberated murder. We have noted that while many of these defendants received life sentences, most of these cases involved only a single killing. *But see State v. Austin*, 320 N.C. 276, 357 S.E.2d 641 (three victims), *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224 (1987).

Defendant argues that the fact that this case involved a multiple killing does not automatically make it proportionate and sets forth cases where defendants have received life sentences for multiple murders. We note that "our responsibility in proportionality review is to evaluate each case independently, considering 'the individual defendant and the nature of the crime or crimes which he has committed.'" *State v. Quesinberry*, 325 N.C. 125, 145, 381 S.E.2d 681, 693 (1989) (quoting *State v. Pinch*, 306 N.C. 1, 36, 292 S.E.2d 203, 229), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 328 N.C. 288, 401 S.E.2d 632 (1991). "Early in the process of developing our methods for proportionality review, we indicated that similarity of cases, no matter how many factors are compared . . . [is not] '. . . the last word on the subject of proportionality'" but merely serves as an initial point of inquiry. *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 46-47 (quoting *State v. Williams*, 308

N.C. 47, 80-81, 301 S.E.2d 335, 356). The issue of whether the death penalty is proportionate in a particular case must rest in part on the experienced judgment of the members of this Court, not simply on a mere numerical comparison of aggravators, mitigators, and other circumstances. *Id.* In addition, "the decision of the jury [is given] great deference in determining whether a death sentence is disproportionate." *State v. Quesinberry*, 325 N.C. at 145, 381 S.E.2d at 694.

This case involves a man who had previously assaulted and seriously injured three other people, by shooting one in the back, severing the hand of another with a knife, and shooting another in the chest. He had pled guilty and been convicted of all three of these previous assaults. However, defendant continued to inflict injuries on other people, ultimately killing two people in a single incident with a semiautomatic rifle. Therefore, based upon our review of the cases in the pool and the experienced judgment of members of this Court, we hold that the sentence of death in this case is not disproportionate and decline to set aside the death penalty imposed.

In summary, we have carefully reviewed the transcript of the trial and sentencing proceeding as well as the record and briefs and oral arguments of counsel. We have addressed all of defendant's assignments of error and conclude that defendant received a fair trial and a fair sentencing proceeding free of prejudicial error before an impartial judge and jury. The conviction and the aggravating circumstances are fully supported by the evidence. The sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor and is not disproportionate.

NO ERROR.


Chief Justice Exum concurring in the result.

I concur in the result reached by the majority on both the guilt-innocence proceeding and the capital sentencing proceeding. I write separately to address defendant's contention that to impose the death penalty upon him is violative of the State constitution because he is mentally retarded. Had the evidence that defendant was mentally retarded been uncontradicted and manifestly credible, then I believe a strong argument could have been made that to execute defendant would violate our State's constitutional prohibition against cruel or unusual punishment. *State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144

**STATE v. SKIPPER**

[337 N.C. 1 (1994)]

(1993) (Exum, C.J., concurring in part and dissenting in part) *cert. denied,* —— U.S. ——, —— L. Ed. 2d —— (1994).

Here, however, the evidence that defendant is mentally retarded is not uncontradicted, and the jury rejected defendant's nonstatutory mitigating circumstance based on his being mentally retarded.

The generally accepted definition of mental retardation is that it afflicts the person in question with (1) a significant subaverage intellectual functioning (2) which exists concurrently with deficits in adaptive behavior and (3) which disability has manifested itself during the person's developmental period. American Association on Mental Deficiency [now Retardation], *Classification in Mental Retardation* 1 (H. Grossman ed. 1983). General intellectual functioning is measured by IQ (intelligent quotient) tests. These tests vary; however, to be classified as mentally retarded, a person generally must score below 70, which would place the person among only three percent of the population. Amici Curiae Brief in Support of Petitioner at 5 n.2, *Penry v. Lynaugh,* 492 U.S. 302, 106 L. Ed. 2d 256 (1989).

Evidence presented at trial tended to show that defendant had a significantly subaverage general intellectual functioning. He dropped out of school during the eighth grade because he was unable to learn and was having difficulty staying awake during a large portion of the school day. Dr. Antonio Puente, a neuropsychologist retained by defendant, tested defendant by means of the Academic Wide-Range Achievement Test and determined defendant's mathematical skills were in a fourth-grade level and that his reading and writing skills were at a level between first and second grade. Defendant's IQ tested at 69.

Dr. Puente found defendant functionally unable to read or write and placed defendant's mental age at six-and-one-half years. Dr. Puente further found defendant to be suffering from "somewhere between a moderate and severe" organic brain syndrome, a defective condition of the brain causing behavioral problems. The cause of this condition was believed to be severe head injuries suffered as a child, including a skull fracture after being dropped on his head as an infant, and hypertension, which caused him to have a facial stroke. In Dr. Puente's opinion, defendant's intellectual deficits left him with a poor ability to learn or remember and a limited ability to plan, carry out or reflect upon the serious issues in his life.

Notwithstanding Dr. Puente's testimony, there was evidence before the jury indicating, among other things, that defendant was well able to function acceptably in society. For example, the evidence indicated that defendant was married and was the father of four children, two of whom were still living. Additionally, defendant helped his father by keeping his father's cattle and repairing his father's vehicles. Defendant's brother testified defendant was always employed and that he fully provided for his children. Other testimony revealed that defendant successfully operated a junkyard, one of the larger businesses in the community.

Although evidence that defendant's IQ tested at 69 was uncontroverted, there was positive evidence before the jury that defendant's IQ did not result in a significant deficit in his adaptive behavior. This evidence, if believed, was sufficient to preclude defendant from being classified as mentally retarded and was enough to support the jury's rejection of mental retardation as a nonstatutory mitigating circumstance. Because the evidence on the issue of defendant's mental retardation is in conflict and because the jury rejected mental retardation as a nonstatutory mitigating circumstance, I concur with the majority's conclusion that to execute this defendant does not violate our State's constitutional prohibition against cruel or unusual punishment on the ground that he is mentally retarded.